UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-23285-CIV-MORENO/O'SULLIVAN

TRUDY MIGHTY, as Personal
Representative of the Estate of
David N. Alexis, deceased,

       Plaintiff,

v.

MIAMI-DADE COUNTY, a Political
Subdivision of the State of Florida,
MIGUEL CARBALLOSA, in his individual
and Official Capacity as Miami-Dade County
Police Officer,

       Defendants.
_____/

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER comes before the Court on Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23, 2/5/15) and Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25, 2/17/15). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 for a report and recommendation. See Order of Referral to Magistrate Judge O'Sullivan For All Pretrial Proceedings (DE# 36, 5/5/15). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23, 2/5/15) be **GRANTED** and that Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25, 2/17/15) be **DENIED** for the reasons stated herein.

**BACKGROUND**

On January 23, 2015, the plaintiff filed her First Amended Complaint (DE# 17, 1/23/15) asserting the following causes of action: violation of 42 U.S.C. § 1983 against Miami-Dade County (Count I); violation of 42 U.S.C. § 1983 against Officer Miguel Carballosa (hereinafter "Officer Carballosa") (Count II); wrongful death against Miami-Dade County (Count III); wrongful death against Officer Carballosa (Count IV); assault and battery against Miami-Dade County (Count V) and negligent failure to train against Miami-Dade County (Count VI).

On February 5, 2015, Miami-Dade County moved to dismiss Counts I, III, V and VI of the First Amended Complaint (DE# 17, 1/23/15). See Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23, 2/5/15). The plaintiff filed her response in opposition on February 19, 2015. See Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26, 2/19/15). Miami-Dade County filed its reply on February 25, 2015. See Miami-Dade County's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint (DE# 28, 2/25/15).

On February 17, 2015, Officer Carballosa moved to dismiss Counts II and IV of the First Amended Complaint. See Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25, 2/17/15). The plaintiff filed her response in opposition on February 25, 2015. See Plaintiff's Response in Opposition to Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 27, 2/25/15). Officer

2

Carballosa filed his reply on March 9, 2015. See Officer Carballosa's Reply

Memorandum in Support of His Motion to Dismiss Plaintiff's Amended Complaint (DE#

32, 3/9/15).

Both motions are ripe for consideration.

## FACTS[1]

On or about the evening of October 2, 2012, David Alexis left work and drove to

his parents' home in Miami, Florida (hereinafter "family home"). See First Amended

Complaint (DE# 17 at ¶14, 1/23/15). Mr. Alexis parked in front of the family home and

exited his vehicle to open the gates of the driveway. He was then confronted by Officer

Carballosa who was undercover and had parked his unmarked pick-up truck across the

street from the family home. Id. at ¶¶15-16.

Officer Carballosa was assigned to the Robbery Intervention Detail Unit

(hereinafter "RID") of the Miami-Dade Police Department, a unit which specializes in

"identifying locations and subjects based upon recent reported crimes and to focus their

resources on these subjects and locations" in order to reduce robberies. First Amended

Complaint (DE# 17 at ¶¶16-17, 1/23/15).[2] "While [Mr.] Alexis stood at or near his car in

---

[1] The facts in this Report and Recommendation are taken from the First Amended Complaint and are presumed true for purposes of ruling on the instant motions to dismiss. Caravello, 315 F. Supp. 2d at 1348.

[2] The factual allegations concerning the RID unit are pled "upon information and belief" and are included in this Report and Recommendation for background purposes only. Officer Carballosa takes issue with other allegations in the First Amended Complaint which are also pled "upon information and belief" and argues that the Court should not rely on those allegations. See Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 2 n.2, 2/17/15) (citing Smith v. City of Sumiton, 578 F. App'x 933, 935 (11th Cir. 2014) (citing Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing Bell Atl. Corp. v.

front of [the family] home, OFFICER CARBALLOSA shot and killed him." Mr. Alexis was

shot multiple times and was "shot in the back as [he] attempted to turn around and go

inside [the family home]." Id. at ¶19. Mr. Alexis "may have been shot, or shot at, by

other unidentified police officers on the scene as well." Id.  At the time of the shooting,

---

Twombly, 550 U.S. 544, 551 (2007))). Specifically, Officer Carballosa takes issue with the allegations that "'upon information and belief,' there was no reason for RID to suspect that Mr. Alexis was engaged, or had been engaged, in prior robberies to justify the surveillance that was occurring outside the house" and that "'upon information and belief,' at no time did Mr. Alexis engage in conduct that would have justified Officer Carballosa's use of force." Id. at 2 n.2 (quoting First Amended Complaint (DE# 17 at ¶18, 20, 22, 1/23/15)). The plaintiff chose not to address this argument in her response, even though this Court has recognized that "'[t]he Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" Dubyk v. RLF Pizza, Inc., No. 13-81028, 2014 WL 1153044, at *2 (S.D. Fla. Mar. 17, 2014) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)). For this reason, the undersigned will disregard the allegations in paragraphs 18, 20 and 22 to the extent that they are based upon information and belief. However, the undersigned will not ignore the First Amended Complaint's other factual allegations.

For instance, Officer Carballosa's argues that "[t]here are no other factual allegations to nudge the 'upon information and belief' allegations that Mr. Alexis' shooting was unjustified across the line from conceivable to plausible." Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 2 n.2, 2/17/15). While this may be true, there are also no factual allegations in the First Amended Complaint to support the conclusion that Officer Carballosa's use of deadly force against Mr. Alexis was justified. There are no factual allegations that Mr. Alexis was armed, that he threatened Officer Carballosa or anyone else, that he was suspected of having committed a crime involving the infliction or threatened infliction of serious physical harm or that Officer Carballosa issued any commands which Mr. Alexis failed to obey. Moreover, the plaintiff specifically alleges that "[Mr.] Alexis did not pose an imminent threat of death or serious physical injury to the officers or to the public." First Amended Complaint (DE# 17 at ¶48, 1/23/15). The undersigned will accept this factual allegation as true in considering Officer Carballosa's motion to dismiss. See Gregory v. Miami-Dade Cnty., No. 13-21350-CIV, 2014 WL 7876231, at *4 (S.D. Fla. Sept. 29, 2014) (on motion to dismiss accepting as true factual allegations that "[police officer] had no probable cause to believe that [the plaintiff] committed any crime or was about to commit a crime" and "had neither reasonable suspicion nor particularized probable cause when he unlawfully seized [the plaintiff] by using deadly force. . . .").

"[Mr.] Alexis did not pose an imminent threat of death or serious physical injury to the officers or to the public." Id. at ¶48. He "was denied reasonable medical care and assistance by OFFICER CARBALLOSA, and potentially other personnel on the scene who were capable of providing necessary medical care and assistance." Id. at ¶21.

Miami-Dade County is a political subdivision of the State of Florida. First Amended Complaint (DE# 17 at ¶6, 1/23/15). Officer Carballosa is a sworn Miami-Dade County Police Officer. Id. at ¶7.

## STANDARD OF REVIEW

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

In considering a motion to dismiss brought under FED. R. CIV. P. 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. See Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court must also accept the non-moving party's well-pled facts as true and construe the complaint in the light most favorable to that party. Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)). To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "When

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950. The issue to be decided is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scheuer, 468 U.S. 183 (1984).

## ANALYSIS

Between the defendants, they seek to dismiss all six counts of the First Amended Complaint. Accordingly, the undersigned will address the defendants' respective arguments by count.

### 1.    Violation of 42 U.S.C. § 1983 Against Miami-Dade County (Count I)[3]

Miami-Dade County seeks to dismiss the plaintiff's section 1983 claim for failure to state a claim pursuant to Rule 12(b)(6). The plaintiff raises several preliminary arguments against the county's motion. First, the plaintiff notes that the district court denied the county's original motion to dismiss as moot when it granted the plaintiff leave to file the First Amended Complaint. The plaintiff argues that "because this Court has already issued a ruling on the same exact arguments that were previously raised,

---

[3] Miami-Dade County argues that "to the extent that Plaintiff's claims attempt to impose vicarious liability on the County for the actions of its employee police officers, those claims must be dismissed." Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23 at 3, 2/5/15). In her response, the plaintiff affirmatively states that "there are no claims for vicarious liability asserted against Miami-Dade County." Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26 at 2, 2/19/15) (capitalization omitted). Based on the plaintiff's representation, the undersigned will not address this argument.

MIAMI-DADE COUNTY's Motion to Dismiss Plaintiff's First Amended Complaint should be denied." Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26 at 2, 2/19/15) (emphasis in original). The plaintiff's argument is unpersuasive. The Court denied the county's prior motion to dismiss <u>as moot</u> and therefore did not reach the merits of the arguments raised by the county in that motion.

The plaintiff further notes that she "is in the unenviable position of attempting to prove her case when various state agencies failed to produce documents until <u>after</u> this lawsuit was filed" and that "there are outstanding discovery requests that Plaintiff has yet to receive [which] are directly relevant to her allegations." Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26 at 6, 2/19/15) (emphasis in original). To the extent the plaintiff relies on this argument as a basis for denying the county's motion to dismiss, the undersigned remains unpersuaded. The failure to obtain documents or the existence of outstanding discovery requests does not lower the pleading requirements of <u>Iqbal</u> and <u>Twombly</u>.

The plaintiff also argues that some of the cases cited by the county were summary judgment cases and are therefore inapplicable to the instant motion to dismiss. <u>See</u> Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26 at 7, 2/19/15) (stating that "MIAMI-DADE COUNTY cannot simply cite to case law and represent that it stands for the determination of a complaint's sufficiency, when the procedural stature clearly pertains to motions for summary judgment."). However,

some of those cases are instructive to the extent they pertain to the black letter law

concerning the plaintiff's claims. The undersigned will now address the section 1983

claim against Miami-Dade County in substance.

Miami-Dade County argues that the plaintiff's section 1983 claim against it is

deficient because:

> Plaintiff fails to identify the official policymakers behind those supposed
> policies. Plaintiff also fails to allege that these policymakers had subjective
> knowledge of a risk of serious harm as a result of any such policy and
> consciously disregarded that risk. Furthermore, Plaintiff fails to identify a
> single prior incident involving a constitutional violation, much less a
> **widespread** practice that was so permanent and well settled as to
> constitute a custom or usage with the force of law. With regard to
> Plaintiff's claim that the County failed to properly train and supervise its
> officers and that this failure caused a violation of Mr. Alexis' constitutional
> rights, Plaintiff fails to allege that the County knew of a need to train
> and/or supervise in a particular area, and that it then made a deliberate
> choice not to take any action. Lastly, Plaintiff fails to allege how these
> purported policies caused a violation of Mr. Alexis' constitutional rights.

Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and

Incorporated Memorandum of Law (DE# 23 at 2, 2/5/15) (emphasis in original). The

plaintiff maintains that she has sufficiently pled a section 1983 claim against the county.

See Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss

Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26,

2/19/15).

To state a claim under section 1983, the plaintiff must allege that: (1) the

defendant deprived her of a right secured under the United States Constitution or

federal law and (2) such deprivation occurred under color of state law. U.S. Steel, LLC,

v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Moreover, municipal liability under

section 1983 is limited. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

"There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers . . . ." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Thus, in order to state a claim against Miami-Dade County, the plaintiff must allege that a constitutional violation which injured Mr. Alexis resulted from (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final county policymaker. Grech v. Clayton Cnty., 335 F.3d 1326, 1329-30 (11th Cir. 2003) (citing Monell, 436 U.S. at 690-91); Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993) ("[A] municipality can be sued under [section] 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury.").

In the instant case, the plaintiff purports to assert a section 1983 claim against Miami-Dade County based on: (1) an official policy; (2) an unofficial custom and[4] practice and (3) a failure to train its officers. See First Amended Complaint (DE# 17 at ¶36(a)-(d), 1/23/15).[5] The undersigned will address these bases of liability in turn.

---

[4] Although the case law only requires a "custom **or** practice," Grech, 335 F.3d at 1329, the plaintiff's First Amended Complaint alleges a "custom **and** practice." See, e.g., First Amended Complaint (DE# 17 at ¶¶ 36(a)-(c), 37, 1/23/15) (emphasis added).

[5] Count I of the First Amended Complaint alleges the following:

> 36. The deprivation of constitutional rights was proximately caused by MIAMI-DADE COUNTY:
>
> > (a) In having a policy and/or custom and practice that directs police officers that deadly force may be used, in the absence of the constitutionally required existence of objective probable cause;
> >
> > (b) In having a policy and/or custom and

**a.    Section 1983 Liability Based on an Officially Promulgated Policy**

The plaintiff has failed to allege facts supporting the existence of an officially

promulgated policy by Miami-Dade County of permitting its officers to use excessive

force. The First Amended Complaint alleges the following:

> 24. Furthermore, **the Policy Manual of the Miami-Dade Police Department at the time of the shooting allowed the use of deadly force against unarmed persons if the police officers have a reasonable belief** that they or another person are in imminent danger of death or serious bodily harm.
>
> 25. The Miami-Dade Police Department allows police officers to utilize deadly force based upon a reasonable belief, instead of the constitutionally required probable cause.
>
> 26. Miami-Dade Police Department officers have **engaged in a custom, policy, and practice of using deadly force against unarmed persons in situations in which the use of such force is necessary [sic] and excessive**, thereby subjecting the public, including David Alexis, to violations of clearly established constitutional rights protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and the comparable provisions of the Florida Constitution.
>
> 27. The **excessive and deadly force used against David Alexis was**

---

> practice of ratifying and approving unreasonably shootings of persons by MIAMI-DADE COUNTY Police Officers, without implementing methods and training necessary to prevent such shootings;
>
> (c) In having a policy and/or custom and practice of failing to discipline police officers, who use deadly force improperly and who unreasonably shoot persons; and
>
> (d) In failing to properly train police officers in the proper and legal use of deadly force.

First Amended Complaint (DE# 17 at ¶36(a)-(d), 1/23/15).

**not an isolated incident, and was consistent with the institutionalized custom, policy, and practice of the Miami-Dade Police Department**. The Miami-Dade Police Department had **prior notice** of the improper, unnecessary, and excessive use of force against persons who were confronted by police and who posed no threat of serious bodily injury or death to the police or the public. **MIAMI-DADE COUNTY and its Police Department were on notice of such practices, and condoned such violations by not disciplining officers who engaged in such use of deadly force. MIAMI-DADE COUNTY and the Police Department failed to take corrective action** within the Police Department to create a bona fide and meaningful system of addressing the unlawful use of deadly force.

First Amended Complaint (DE# 17 at ¶¶ 24-27, 1/23/15) (emphasis added).[6]

Although the First Amended Complaint contains general allegations of a "policy and/or custom and practice" allowing police officers to use deadly force without probable cause, the plaintiff fails to cite to a **specific** policy of Miami-Dade County. Paragraph 24 of the First Amended Complaint refers to the Policy Manual of the Miami-Dade Police Department. However, there are no allegations in the First Amended Complaint that the Policy Manual of the Miami-Dade Police Department was adopted by Miami-Dade County as its own officially promulgated policy.

The Eleventh Circuit affirmed the dismissal of a section 1983 claim against a municipality where the complaint alleged that the city "had a policy or custom," but made no factual allegations supporting the existence of such a policy or custom. Pierre v. City of Miramar, Fla., Inc., 537 F. App'x 821, 827 (11th Cir. 2013) (per curiam). The complaint in Pierre alleged:

---

[6] Some of these allegations pertain to the plaintiff's assertion of an official policy and, alternatively, an unofficial custom and practice.

that the City had a policy or custom of (1) "failing to enforce the
requirement that officers have probable cause for an arrest before the
arrest is made and instead allow[ing] officers to obtain or assert probable
cause after an arrest is made because the victim of the arrest will usually
become frustrated and plead 'no contest' to avoid jail time"; (2) "permitting
officers to turn a blind eye to easily discoverable evidence in determining
whether probabl[e] cause exists"; and (3) failing to train or supervise
officers.

Pierre, 537 F. App'x at 826. The Eleventh Circuit concluded that the dismissal was

proper in part because "[the plaintiff] alleged no facts supporting the existence of these

purported City policies." Similarly here, while the plaintiff alleges that the county had a

"policy and/or custom and practice," she does not allege any factual support for the

existence of such a "policy and/or custom and practice."

Similarly in Vila v. Miami-Dade Cnty., No. 09-23829-CIV, 2014 WL 6976273, at

*4 (S.D. Fla. Nov. 25, 2014), this Court rejected the "vast majority of [the p]laintiff's

'custom or policy' allegations" because they were "simply recitations of the elements of

a section 1983 cause of action without any supporting facts."  In doing so, this Court

observed that:

> Such conclusory allegations "carry no weight" in the Court's analysis,
> because "[c]onclusory allegations fail to apprise defendants of the factual
> basis of the plaintiff's claims." See Franklin v. Curry, 738 F.3d 1246, 1250-
> 51 (11th Cir. 2013). See Twombly, 550 U.S. at 570, 127 S.Ct. 1955 (a
> complaint must contain sufficient factual matter to "state a claim to relief
> that is plausible on its face")[.] The Supreme Court has directed that
> district courts faced with such conclusory allegations should disregard
> them, and "then determin[e] whether the remaining well-pleaded factual
> allegations, accepted as true, 'plausibly give rise to an entitlement to relief
> . . . .'" Franklin, 738 F.3d at 1251 (citing Iqbal, 556 U.S. at 679, 129 S.Ct.
> 1937).

Id. Similarly here, although the First Amended Complaint alleges the existence of an

official policy, there are no factual allegations to support an official policy and the

12

plaintiff cannot rely on mere labels or conclusory allegations to plead the existence of such a policy.

On a similar vein, paragraph 36(b) of the First Amended Complaint accuses the county of "having a policy and/or custom and practice **of ratifying and approving** unreasonably [sic] shootings of persons by MIAMI-DADE COUNTY Police Officers, without implementing methods and training necessary to prevent such shootings." First Amended Complaint (DE# 17 at ¶36(b), 1/23/15) (emphasis added). "For plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory, . . . 'they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis. . . .'" Pierre, 537 F. App'x at 827 (quoting Garvie v. City of Fort Walton Beach, 366 F.3d 1186, 1189 (11th Cir. 2004)). Here, the First Amended Complaint contains no factual allegations to support a ratification theory. In Pierre, the Eleventh Circuit affirmed the district court's order granting the city's motion to dismiss where "[the plaintiff] alleged no facts supporting the existence of . . . purported [c]ity policies" and "also alleged no facts demonstrating that the [c]ity ratified [d]efendant [o]fficers' alleged conduct." Id. at 826-27. The First Amended Complaint filed in the instant case suffers from the same infirmities.

The plaintiff also fails to identify official policymakers. "Regardless of whether a plaintiff attempts to state a claim under section 1983 by alleging a policy or a custom, he or she must also identify an official who speaks with 'final policymaking authority for [the municipality] concerning the act alleged to have caused the particular constitutional violation in issue.'" See Hoefling v. City of Miami, 17 F. Supp. 3d 1227, 1239 (S.D. Fla.

13

2014) (quoting <u>Reyes v. City of Miami Beach</u>, No. 07-22680-CIV, 2008 WL 686958, at

*12 (S.D. Fla. Mar. 13, 2008) (citing <u>Grech</u>, 335 F.3d at 1330)).

For these reasons, the plaintiff's general, boilerplate allegations are insufficient

to support a section 1983 claim against the county based on an officially promulgated

policy.

### b.   Section 1983 Liability Based on an Unofficial Custom or Practice

In the absence of an official county policy, the plaintiff must allege an unofficial

custom or practice of the county. To proceed under the theory of an unofficial custom or

practice, the plaintiff must allege that the county's acts and customs were so

widespread and longstanding that the county's policymakers must have known that they

could be considered unofficial practice. <u>Brown v. City of Ft. Lauderdale</u>, 923 F.2d 1474,

1481 (11th Cir. 1991) (stating that "a longstanding and widespread practice is deemed

authorized by the policymaking officials because they must have known about it but

failed to stop it."); <u>Smith v. Mercer</u>, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff

must identify a 'consistent and widespread practice' of constitutional deprivations to

prove local government liability for an unofficial custom."). Here, the First Amended

Complaint does not allege any prior acts which would support "a longstanding and

widespread practice." <u>Id.</u>

Moreover, the plaintiff "fail[ed] to plead the necessary elements of an unofficial

policy claim because [s]he wholly fails to identify, as is required, 'those officials who

speak with final policymaking authority for that local governmental entity concerning the

act alleged to have caused the particular constitutional violation in issue.'" <u>Hoefling</u>, 17

F. Supp. 3d at 1239 (citing <u>Grech</u>, 335 F.3d at 1329).

The plaintiff has also failed to plead a cause of action based on the county's failure to discipline its officers. The Eleventh Circuit has stated that "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1308 (11th Cir. 1999) (quoting <u>Brooks v. Scheib</u>, 813 F.2d 1191, 1193 (11th Cir. 1987)). Paragraph 36(c) alleges that the county deprived Mr. Alexis of constitutional rights by "having a policy and/or custom and practice of failing to discipline police officers, who use deadly force improperly and who unreasonably shoot persons." First Amended Complaint (DE# 17 at ¶36(c), 1/23/15). This conclusory and unsupported allegation is insufficient to survive dismissal.

"A municipality may be liable for violating Section 1983 even where the municipality provides rules and regulations for the operation of its police department, if those rules were repeatedly violated and the municipality failed to rectify the situation." <u>Rivas v. Figueroa</u>, No. 11-23195-Civ, 2012 WL 1378161, at *3 (S.D. Fla. Apr. 20, 2012) (citing <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir. 1986)). In <u>Rivas</u>, this Court found that the plaintiff had plead a cause of action based on the city's failure to discipline its officers noting that:

> While the multiple examples of prior incidences alleged by the Plaintiffs [we]re not precisely identical to the facts in this case, they [we]re similar enough to make out a claim that [the city] ha[d] adopted a widespread practice of permitting its officers to use excessive force. The Third Amended Complaint adequately ple[d] a cause of action that use of excessive force by [city] Beach officers (without any negative repercussions) has become so permanent and well settled as to constitute

a custom or policy.

Id. Here, the First Amended Complaint contains no examples of the county failing to discipline its officers for unjustifiably using deadly force. In Vazquez v. City of Miami Beach, 895 F. Supp. 2d 1275, 1278 (S.D. Fla. 2012), for instance, this Court found that a plaintiff had sufficiently "allege[d] that the [c]ity ha[d] adopted a wide-spread practice of permitting officers to use excessive force" where the amended complaint "alleged thirty-eight instances of Fourth Amendment violations by Miami Beach police officers that involved the use of excessive force without official repercussions." Here, the First Amended Complaint fails to allege any examples of the county failing to discipline officers "who use deadly force improperly and who unreasonably shoot persons." First Amended Complaint (DE# 17 at ¶36(c), 1/23/15).

The plaintiff has failed to state a cause of action for an unofficial custom or practice of permitting police officers to use excessive force.[7]

_____

[7] Miami-Dade County also argues that the plaintiff failed to plead an unofficial policy because she has not shown that "either the Board or the County Mayor had subjective knowledge of a risk of serious harm and consciously disregarded that risk." Miami-Dade County's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint (DE# 28 at 5, 2/25/15) (citing Cook v. Sheriff of Monroe Cnty., 402 F. 3d 1092, 1115 (11th Cir. 2005)). However, the Cook case involved a Fourteenth Amendment claim by a pretrial detainee. Cook, 402 F. 3d at 1115 (stating that "in a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under . . . the . . . fourteenth amendment, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life.") (citation omitted). Notably, the plaintiff also cites the Cook case, but for a different proposition.

Here, the only constitutional violation for which the plaintiff proffers any support is a Fourth Amendment claim based on excessive force. In any event, there are sufficient grounds to support the dismissal of the plaintiff's section 1983 claim against the county based on an unofficial policy for the reasons stated above.

c.    **Section 1983 Liability Based on a Failure to Train**

The First Amended Complaint also alleges that "[t]he deprivation of constitutional rights was proximately caused by MIAMI-DADE COUNTY . . . [i]n failing to properly train police officers in the proper and legal use of deadly force." First Amended Complaint (DE# 17 at ¶36(d), 1/23/15). Miami-Dade County would only be liable for a failure to train its officers when its policy causes a constitutional violation. Monell, 436 U.S. at 694; Gold, 151 F.3d at 1350 (noting that "the City is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [the plaintiff]'s constitutional rights.").

As noted above, the plaintiff may establish the county's "policy" by identifying (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker. Grech, 335 F.3d at 1329. In the instant case, the First Amended Complaint does not identify final policymakers for the county or attribute any act or knowledge on a final policymaker. Without "an identified official policy and an alleged [county] policymaker, [the p]laintiff must then allege that the [county]'s acts and customs were so widespread and longstanding that [the county]'s policymakers must have known and that they could be considered unofficial practice." Andrade v. Miami-Dade Cnty., No. 09-23220-CIV, 2011 WL 4345665, at *8 (S.D. Fla. Sept. 16, 2011).

"Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has . . . explained that a plaintiff may prove a [county] policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants." Gold,

17

151 F.3d at 1350 (citing <u>Harris</u>, 489 U.S. at 388-89). Here, the First Amended Complaint alleges that "[t]he shooting of [Mr.] Alexis was the result of conduct that was recklessly, maliciously, or **deliberately indifferent** to [Mr.] Alexis, in depriving him of his constitutional rights." First Amended Complaint (DE# 17 at ¶34, 1/23/15) (emphasis added). However, mere labels and conclusory allegations are insufficient to survive a motion to dismiss. "Where the allegations [in a complaint] are merely 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' the plaintiff's claim will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." <u>Urquilla-Diaz v. Kaplan Univ.</u>, 780 F.3d 1039, 1051 (11th Cir. 2015) (citing <u>Twombly</u>, 550 U.S. at 555).

"Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." <u>Mingo v. City of Mobile</u>, 592 F. App'x 793, 799-800 (11th Cir. 2014). The First Amended Complaint does not allege facts that would support "a widespread pattern of similar constitutional violations" because there are no **specific** allegations of any similar shootings.

"To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." <u>Gold</u>, 151 F.3d at 1350. Here, the First Amended Complaint alleges that:

> MIAMI-DADE COUNTY and its Police Department were **on notice** of such

> practices, and condoned such violations by not disciplining officers who
> engaged in such use of deadly force. MIAMI-DADE COUNTY and the
> Police Department failed to take corrective action within the Police
> Department to create a bona fide and meaningful system of addressing
> the unlawful use of deadly force.

First Amended Complaint (DE# 17 at ¶27, 1/23/15) (emphasis added).[8] The bare and

unsupported allegation that the county was "on notice" is insufficient to conclude that

the county had knowledge of the need to train its officers. Moreover, "[a] pattern of

similar constitutional violations by untrained employees is 'ordinarily necessary' to

demonstrate deliberate indifference for purposes of failure to train." Connick v.

Thompson, 131 S. Ct. 1350, 1360 (2011). The First Amended Complaint does not

contain **factual** allegations demonstrating that Mr. Alexis' shooting death was part of a

series of prior similar conduct of which the county was aware and still chose to take no

action.

    The plaintiff argues that a single incident is sufficient to state a claim against the

county based on a failure to train:

> With respect to the second and third elements, a showing of prior specific
> incidents that establish a pattern of constitutional violations is not
> necessary to put the governmental entity on notice that its training
> program is deficient. Rather, evidence of a single violation of federal
> rights, accompanied by a showing the entity has failed to train its
> employees to handle recurring situations presenting an obvious potential
> for such a violation, is sufficient to trigger liability.

---

[8] This same paragraph also alleges that "The **Miami-Dade Police Department
had prior notice** of the improper, unnecessary, and excessive use of force against
persons who were confronted by police and who posed no threat of serious bodily injury
or death to the police or the public." First Amended Complaint (DE# 17 at ¶27, 1/23/15)
(emphasis added). However, this sentence pertains only to the police department and
does not allege that Miami-Dade County had "prior notice." In any event, a bare and
conclusory allegation of "notice" is insufficient to meet the pleading standards of
Twombly. See Urquilla-Diaz, 780 F.3d at 1051, supra.

Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26 at 12-13, 2/19/15) (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 1283 (1997) and Harris, 489 U.S. at 390 n.10). The undersigned agrees with the plaintiff that in theory and under special circumstances a single incident could be sufficient to establish liability against a government entity based on the failure to train. "[T]he Supreme Court [has] hypothesized [that in a scenario where] a police force . . . gives officers firearms but fails to provide any training regarding the constitutional limitations on the use of deadly force . . . the need to provide such training would be 'so obvious' that the failure to do so could amount to deliberate indifference." Keith v. DeKalb Cnty., 749 F.3d 1034, 1053 n.56 (11th Cir. 2014) (citing Harris, 489 U.S. at 390 n.10). However, the facts alleged in the First Amended Complaint are insufficient to meet this high standard. See Whitaker v. Miami-Dade Cnty, No. 13-cv-24450-JAL, Order Granting Miami-Dade County's Motion to Dismiss, DE# 65 at 17, (S.D. Fla. Feb. 20, 2015) (noting that "[t]he single-incident liability exception is a narrow one and guidance is limited as neither the Supreme Court nor the Eleventh Circuit has ever applied it.").[9] The facts as alleged in the First Amended Complaint require the plaintiff to show more than a single incident. "Normally random acts or isolated incidents are insufficient to establish a custom or policy." Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). Here, the

---

[9] This Court in Whitaker did note that the Fifth Circuit affirmed a jury verdict based on a single incident. Whitaker, DE# 65 at 17 (citing Brown v. Bryan Cnty, 219 F.3d 450, 462 (5th Cir. 2000)). However in Brown, the county had "a policy of providing no training itself for its regular officers and reserve deputies." Id. Here, the plaintiff is not alleging that Miami-Dade County provided **no** training to its officers on the appropriate use of deadly force, but rather that the training it provided was inadequate.

First Amended Complaint contains no factual support for its assertion that Miami-Dade County was deliberately indifferent to the rights of its inhabitants.

The mere recitation of the elements of a section 1983 cause of action is not enough. The plaintiff must plead facts to support those elements. For the reasons stated herein, the plaintiff has failed to plead a cause of action under section 1983 against Miami-Dade County and the county's motion to dismiss this claim (Count I) should be **GRANTED**.

**2.      Violation of 42 U.S.C. §1983 Against Officer Carballosa (Count II)**

Officer Carballosa seeks to dismiss the plaintiff's claims against him based on the doctrine of qualified immunity. See Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 2, 2/17/15). Central to Officer Carballosa's arguments in favor of qualified immunity is the Offense-Incident Report. The parties dispute whether the Court can consider the Offense-Incident Report on a Rule 12(b)(6) motion to dismiss. As such, the Court should address the applicability of Offense-Incident Report first.

**a.      The Offense Incident Report**

Officer Carballosa argues that "[t]he Court may consider the Offense-Incident Report because the documents [sic] are public records and certainly central to Plaintiff's claim" and "because they [sic] are obviously authentic and are [sic] not expressly refuted by the factual allegations in the Amended Complaint." Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum

of Law (DE# 25 at 3 n.3, 2/17/15).[10] The plaintiff maintains that "[t]he report, itself, is not

central to Plaintiff's case; it is unauthenticated, contains hearsay and disputed facts;

and is not a public record as defined under federal precedent." Plaintiff's Response in

Opposition to Officer Carballosa's Motion to Dismiss Plaintiff's First Amended

Complaint and Incorporated Memorandum of Law (DE# 27 at 3, 2/25/15).

The Eleventh Circuit has recognized that "documents attached to a complaint or

incorporated in the complaint by reference can generally be considered by a federal

court in ruling on a motion to dismiss under Rule 12(b)(6)." Saunders v. Duke, 766 F.3d

1262, 1270 (11th Cir. 2014). In considering documents extraneous to the complaint on

a Rule 12(b)(6) motion to dismiss, the Eleventh Circuit has stated:

> In general, we "do not consider anything beyond the face of the complaint
> and documents attached thereto when analyzing a motion to dismiss
> [under Rule 12(b)(6) ]." Fin. Sec. Assurance, Inc. v. Stepandhens, Inc.,
> 500 F.3d 1276, 1284 (11th Cir. 2007). "This [C]ourt recognizes an
> exception, however, in cases in which [1] a **plaintiff refers to a**
> **document in its complaint**, [2] the document is central to [her] claim, [3]
> **its contents are not in dispute**, and [4] the defendant attaches the
> document to its motion to dismiss."

Fuller v. SunTrust Banks, Inc., 744 F.3d 685, 695-96 (11th Cir. 2014) (alterations in

original; emphasis added). Moreover, "[a] document is considered 'undisputed' when

the 'authenticity of the document is not challenged.'" Id. at 696.

Even where a document is attached to the complaint, a district court must

disregard it if the complaint alleges that the document is not truthful. In Saunders, for

---

[10] Officer Carballosa acknowledges that "any facts in the Offense-Incident Report
that are inconsistent with the allegations of the pleading should not be considered by
the Court in deciding this motion." Officer Carballosa's Motion to Dismiss Plaintiff's First
Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 3 n.3, 2/17/15).

instance, the Eleventh Circuit reversed a district court's order dismissing the plaintiff's

excessive force claims against two law enforcement agents based on qualified

immunity. In doing so, the appellate court did not rely on statements in a police report

even though it was attached to the plaintiff's complaint because the plaintiff in that case

had alleged that the contents of the police report were not truthful:

> [w]here a civil rights plaintiff attaches a police report to his complaint and
> alleges that it is false . . . the contents of the report cannot be considered
> as true for purposes of ruling on a motion to dismiss. Otherwise, officers
> sued under § 1983 could just attach police reports referenced in a civil
> rights complaint to their motions to dismiss and ask courts to consider the
> contents of those reports even if they contradicted the allegations of the
> complaint.

Saunders, 766 F.3d at 1270.

In his reply, Officer Carballosa cites Saunders and notes that in the instant case:

> Plaintiff does not specifically address which facts (if any) in the
> Offense-Incident Report are disputed by the Amended Complaint, nor
> does she specifically allege in her Amended Complaint that the
> Offense-Incident Report or other police reports were fabricated.
> Accordingly, Plaintiff has not adequately disputed, or challenged the
> authenticity of, the contents of the Offense-Incident Report.

Officer Carballosa's Reply Memorandum in Support of His Motion to Dismiss Plaintiff's

Amended Complaint (DE# 32 at 3, 3/9/15). The undersigned does not read Saunders to

require the plaintiff to negate the facts in the Offense-Incident Report where, as here,

the plaintiff's First Amended Complaint makes no mention of the Offense-Incident

Report, does not attach it as an exhibit and does not incorporate it by reference.

This Court has refused to consider the contents of a police report on a Rule

12(b)(6) motion to dismiss where the complaint makes no reference to the report:

> Defendants argue that the Court can consider the police report attached to their Motion [to Dismiss] in determining the existence of probable cause and, consequently, Officer Perez's affirmative defense to Plaintiffs' claim of false imprisonment. See Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir.1998) ("The existence of probable cause constitutes an affirmative defense to the claims of false arrest and false imprisonment under Florida law."). However, the Second Amended Complaint does not make any specific reference to the attached police report. Therefore, the Court cannot consider the police report as part of the pleadings.

Gregory v. Miami-Dade Cnty., No. 13-21350-CIV, 2014 WL 7876231, at *4 (S.D. Fla. Sept. 29, 2014) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). As in Gregory, the plaintiff here did not attach the Offense-Incident Report to her First Amended Complaint and she did not incorporate this document by reference. In fact, the First Amended Complaint makes no mention of the Offense-Incident Report.

Officer Carballosa also argues that "because the Offense-Incident Report is a matter of public record, this Court may consider it even if it goes beyond the four-corners of the Amended Complaint." Officer Carballosa's Reply Memorandum in Support of His Motion to Dismiss Plaintiff's Amended Complaint (DE# 32 at 3, 3/9/15). However, it is clear from the case law that the designation of a document as a public record alone is insufficient to properly bring it before the Court on a Rule 12(b)(6) motion to dismiss. See, e.g., Wordley v. San Miguel, 567 F. App'x 719, 720 n.1 (11th Cir. 2014) (per curiam) (stating "[u]nlike the district court, we do not consider the events described in the police reports attached to Officer San Miguel's motion to dismiss. **Given what [the plaintiff] alleged, we cannot say that the events referenced in the reports – even if central to [the plaintiff]'s claim – are undisputed**.") (emphasis

24

added);[11] Petithomme v. Cnty. of Miami-Dade, 511 F. App'x 966, 969 n.2 (11th Cir. 2013) (per curiam) (on appellate review of an order denying a motion to dismiss based on qualified immunity stating "[t]he Officers assert that Plaintiff became aggressive when producing the identification and that she yelled at [one of the officers]. **We do not credit these factual allegations because they are not alleged in the Complaint and the police report containing such statements was not attached as an exhibit to the Third Amended Complaint**.") (emphasis added) (citation omitted).

Here, the plaintiff did not attach the Office Incident Report to her First Amended Complaint and did not incorporate this document by reference. There is simply no mention of this document in the First Amended Complaint. Moreover, the contents of the Offense-Incident Report differ from the plaintiff's account of the shooting as alleged in her First Amended Complaint. As such, the Court should not consider the Offense-Incident Report in ruling on Officer Carballosa's Rule 12(b)(6) motion to dismiss.

---

[11] In Wordley, the district court followed the same reasoning that Officer Carballosa advances here in considering the police reports:

> Defendant filed the police reports as attachments to his Motion to Dismiss. The Court may consider a document attached to a motion to dismiss if the document is central to the plaintiff's claim and undisputed. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). "Undisputed" means that the authenticity of the document is not challenged. Id. Thus, the Court may consider the police reports Defendant has attached to the Motion to Dismiss because their authenticity has not been challenged and they relate to Plaintiff's arrest, which is the basis of his complaint.

Wordley v. San Miguel, 915 F. Supp. 2d 1312, 1314 n.2 (S.D. Fla. 2013). Although the Eleventh Circuit affirmed the district court's ruling on qualified immunity, it did not agree with the district court's conclusion that the police reports were properly before it on a Rule 12(b)(6) motion to dismiss. See Wordley, 567 F. App'x at 720 n.1, supra.

**b.    Qualified Immunity**

Having determined that the Court should not consider the Offense-Incident Report in ruling on Officer Carballosa's Rule 12(b)(6) motion to dismiss, the undersigned now turns to the merits of Officer Carballosa's qualified immunity argument.

The doctrine of "[q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quoting Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001) (internal quotations omitted)). "Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). As such, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. at 232 (internal quotation marks omitted).

To be entitled to qualified immunity, a defendant must first show he or she was performing a discretionary function. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005) (citation omitted). "[T]he burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009) (citations omitted). In meeting this burden, the plaintiff must show both that: (1) the defendant violated a constitutional right and (2) the right was clearly established at the time of the violation. Id. (citations omitted). "Courts are no longer required to address the two prongs of this test in any particular order." Williams v.

Santana, 340 F. App'x 614, 617 (11th Cir. 2009) (citing Pearson v. Callahan, 129 S.Ct.
808, 820-21 (2009)). If the plaintiff fails to meet one of these prongs, the officer is
entitled to qualified immunity.

In the instant case, the plaintiff does not challenge Officer Carballosa's claim that
he was performing a discretionary function when he encountered Mr. Alexis on October
2, 2012. See Plaintiff's Response in Opposition to Officer Carballosa's Motion to
Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law
(DE# 27 at 2 n.1, 2/25/15) (stating that "[i]n responding to CARBALLOSA's Motion to
Dismiss, Plaintiff will assume that CARBALLOSA was acting within his discretionary
authority."). The burden is therefore on the plaintiff to show that: (1) Officer Carballosa
violated a constitutional right and (2) the right was clearly established at the time of
Officer Carballosa's encounter with Mr. Alexis.

> **(i).** **Whether the Plaintiff Has Shown a Violation of a Constitutional Right**

At the outset, the undersigned notes that although the First Amended Complaint
alleges that the defendants' conduct violated Mr. Alexis' "rights under the Fourth, Fifth,
Eighth, and Fourteenth Amendments to the United States Constitution," the only
constitutional violation addressed in the Plaintiff's Response in Opposition to Officer
Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated
Memorandum of Law (DE# 27, 2/25/15) is a Fourth Amendment violation. Therefore,
the undersigned will not address any constitutional violations other than the alleged
Fourth Amendment violation in this Report and Recommendation.

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."
U.S. Const. amend. IV. The Supreme Court has stated that "[w]henever an officer
restrains the freedom of a person to walk away, he has seized that person" and that
"there can be no question that apprehension by the use of deadly force is a seizure
subject to the reasonableness requirement of the Fourth Amendment." Tennessee v.
Garner, 471 U.S. 1, 7 (1985); see also West v. Davis, 767 F.3d 1063, 1070 (11th Cir.
2014) (observing that "a seizure can be accomplished in an instant, for example and
most starkly as a result of deadly force from a police bullet.") (citing Garner, 471 U.S. at
9).

    "The Fourth Amendment's 'objective reasonableness' standard supplies the test
to determine whether the use of force was excessive." Penley v. Eslinger, 605 F.3d
843, 849-850 (11th Cir. 2010) (citing Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir.
2009)). "Reasonableness is dependent on all the circumstances that are relevant to the
officer's decision to use deadly force, including the seriousness of the crime, whether
the suspect poses an immediate danger to the officer or others, whether the suspect
resisted or attempted to evade arrest, and the feasibility of providing a warning before
employing deadly force." Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010)
(citing Penley, 605 F.3d at 850).

    Moreover, "'[t]he only perspective that counts is that of a reasonable officer on
the scene at the time the events unfolded.'" Jean-Baptiste, 627 F.3d at 821 (quoting
Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009)); see also St. George v.
Pinellas Cnty., 285 F.3d 1334, 1338 (11th Cir. 2002) (noting that "[u]se of force is
judged on a case-by-case basis 'from the perspective of a reasonable officer on the

scene, rather than with the 20/20 vision of hindsight.'") (quoting <u>Graham</u>, 490 U.S. 386, 396 (1989 )). "[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." <u>Long v. Slaton</u>, 508 F.3d 576, 581 (11th Cir. 2007). "[C]ourts must account 'for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" <u>Jean-Baptiste</u>, 627 F.3d at 820-21 (quoting <u>Graham</u>, 490 U.S. at 397).

The plaintiff argues that "[Officer] CARBALLOSA's use of excessive and deadly force was not reasonable in light of the circumstances" because "[Mr.] ALEXIS had returned home from work, was standing outside of his parents' home, and was unarmed" at the time of the shooting. <u>See</u> Plaintiff's Response in Opposition to Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 27 at 10, 2/25/15).

Officer Carballosa argues that he "was forced to make a split-second decision to use force when Mr. Alexis, who was carrying a firearm, defied Officer Carballosa's commands to stop moving and to show his hands." Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 2, 2/17/15). Specifically, Officer Carballosa cites to the following "facts" to support the argument that his use of deadly force was objectively reasonable under the circumstances:

> the uncontradicted background facts from the Offense-Incident Report demonstrate that: (1) Officer Carballosa was conducting surveillance across the street from Mr. Alexis' home after a suspicious vehicle fled

from two other RID officers; (2) Mr. Alexis backed his vehicle into the driveway across the street from where Officer Carballosa was conducting the surveillance and shined his high beams into Officer Carballosa's vehicle; (3) Mr. Alexis then began to approach Officer Carballosa's vehicle in a suspicious manner with his right hand behind his back as if grasping a weapon; (4) when Officer Carballosa identified himself as a police officer and ordered Mr. Alexis to stop and show his hands, Mr. Alexis ignored Officer Carballosa's commands and continued to advance on Officer Carballosa; (5) recognizing that he was faced with a possibly dangerous individual, Officer Carballosa unholstered his duty weapon, exited his vehicle, and again ordered Mr. Alexis to stop moving and to show his hands; and (6) fearing for his life as he was faced with an individual who the officer believed was carrying a pistol and who was defying the officer's repeated commands to stop moving and to show his hands, Officer Carballosa was forced to fire his weapon on Mr. Alexis.

Id. at 8-9.

The problem with Officer Carballosa's argument is that nowhere in the Amended Complaint does the plaintiff allege that Mr. Alexis was carrying a firearm, that Officer Carballosa issued commands to Mr. Alexis or that Mr. Alexis ignored any directives from Officer Carballosa or any other officer. Rather than being confrontational, it appears from the facts alleged in the First Amended Complaint that Mr. Alexis attempted to retreat to the safety of the family home during the shooting. See First Amended Complaint (DE# 17 at ¶19, 1/23/15) (alleging that "[t]here were a number of shots fired, including being shot in the back as David Alexis attempted to turn around and go inside his parents' house. David Alexis may have been shot, or shot at, by other unidentified police officers on the scene as well.").[12] The facts underlying Officer Carballosa's argument in favor of qualified immunity are not in the First Amended Complaint and the undersigned has already determined that the Offense-Incident

_____

[12] It is unclear from the factual allegations of the First Amended Complaint whether it was Officer Carballosa or another officer who shot Mr. Alexis in the back.

Report should not be considered on a Rule 12(b)(6) motion to dismiss where the First Amended Complaint does not attach this report, does not incorporate it by reference and makes no allegations about this report.

Here, there are no allegations in the First Amended Complaint that Mr. Alexis was accused or suspected of any crime. He was unarmed.  There are no allegations that Mr. Alexis was belligerent, failed to heed any police orders or threatened Officer Carballosa or anyone else. Accordingly, under the facts of the First Amended Complaint, the plaintiff has shown that Officer Carballosa's use of deadly force against Mr. Alexis was objectively unreasonable and a violation of Mr. Alexis' Fourth Amendment rights.[13] The plaintiff has met the first prong.

### (ii).  Whether the Constitutional Right Was Clearly Established at the Time of Mr. Alexis' Shooting

In order to overcome Officer Carballosa's claim of qualified immunity, the plaintiff must also show that the constitutional right at issue was clearly established at the time of the shooting.

> To demonstrate that the law at the time clearly established that Defendants' conduct would violate the Constitution, Plaintiffs might point to either (1) earlier case law from the Supreme Court, this Court, or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general

---

[13] The plaintiff also argues that "[e]ven if this Court finds that CARBALLOSA was justified in utilizing deadly force, CARBALLOSA's failure to stop shooting ALEXIS long after any potential threat had subsided removes him from qualified immunity protection." Plaintiff's Response in Opposition to Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 27 at 10, 2/25/15). Because Officer Carballosa's use of deadly force to initially seize Mr. Alexis was objectively unreasonable under the circumstances, it is unnecessary to address the plaintiff's alternative argument that the continued use of deadly force was also a constitutional violation.

> rules of law from a federal constitutional or statutory provision or earlier case law that applied with "obvious clarity" to the circumstances, establishing clearly the unlawfulness of Defendants' conduct. And "where the applicable legal standard is a highly general one, such as 'reasonableness,' preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law."

Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007) (citations omitted). "This second inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Lee, 284 F.3d at 1194 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "[T]he salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Hope v. Pelzer, 536 U.S. 730, 741, (2002)).

   To support her argument that the constitutional violation was clearly established at the time of Mr. Alexis' shooting, the plaintiff cites to three Eleventh Circuit decisions: St. George v. Pinellas Cnty., 285 F.3d 1334 (11th Cir. 2002), Harper v. Perkins, 459 F. App'x 822 (11th Cir. 2012) and Morton v. Kirkwood, 707 F.3d 1276 (11th Cir. 2013).[14] See Plaintiff's Response in Opposition to Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 27 at 13-14, 2/25/15).[15] None of these cases are factually similar to the instant case.

---

[14] Notably, Morton was decided after Mr. Alexis' October 2, 2012 shooting.

[15] The plaintiff also argues that:

> In considering the precise factual allegations contained within Plaintiff's First Amended Complaint, and under the "obvious clarity" test, "it would be clear to every reasonable officer, even in the absence of case law, that

The <u>Harper</u> case involved the use of a taser on an intoxicated suspect who was standing on a tree branch. <u>Harper</u>, 459 F. App'x at 828. In its decision, the Eleventh Circuit "emphasize[d] the peculiar facts of th[at] case – among other things, that a taser was used on a person standing with his hands in the air at least four feet off the ground in a tree." In <u>Morton</u>, a police officer shot the plaintiff after the plaintiff "shifted his car to park and raised his hands." 707 F.3d at 1280. "[T]he car [then] shifted to reverse and traveled backward" hitting a tree. <u>Id.</u> Of the three cases cited by the plaintiff, <u>St. George</u> is the closest to the facts of the instant case. However, even that case is factually distinguishable: the decedent did not match the description of the suspect, he was standing in his kitchen and reaching for the refrigerator door when an officer standing outside the house shot the decedent through an open window. 285 F.3d at 1338.

The Eleventh Circuit has stated that "[a] judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." <u>Youmans v. Gagnon</u>, 626 F.3d 557, 563 (11th Cir. 2010) (<u>per curiam</u>). The cases cited by the plaintiff are materially different from the

------

the force used [by CARBALLOSA] . . . was excessive under the circumstances." Even if, at some point, CARBALLOSA was in fear of his life, his continuous shooting at ALEXIS, including the multiple shots in ALEXIS's back, after any potential threat had been eliminated, is excessive under the circumstances.

Plaintiff's Response in Opposition to Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 27 at 15, 2/25/15). As noted earlier, the First Amended Complaint does not identify the officer or officers who shot Mr. Alexis in the back. Because the constitutional violation at the time of the shooting was clearly established, the undersigned will not address the plaintiff's "obvious clarity" argument.

facts of the instant case. Nonetheless and for the reasons discussed below, the undersigned concludes that the constitutional violation was clearly established at the time of Mr. Alexis' shooting.

Officer Carballosa maintains that "both the U.S. Supreme Court and the Eleventh Circuit have consistently held that officers have the right to use deadly force to subdue an individual who poses a threat to the life of the officer or the lives of others." Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 11, 2/17/15). While Officer Carballosa correctly summarizes the law, the facts as alleged in the First Amended Complaint do not show that Mr. Alexis posed a threat to Officer Carballosa or anyone else at the time of the shooting.

Here, the plaintiff has alleged facts which, if taken as true, show that Officer Carballosa employed excessive force when he used deadly force in his encounter with Mr. Alexis. In the instant case, Mr. Alexis was unarmed. See First Amended Complaint (DE# 17 at ¶33, 1/23/15). There are no allegations in the First Amended Complaint to suggest that Mr. Alexis was suspected of any crime and the First Amended Complaint specifically alleges that "[Mr.] Alexis did not pose an imminent threat of death or serious physical injury to the officers or to the public." Id. at ¶48. In McKinney, the Eleventh Circuit noted that "[t]he law was clearly established before [the officer]'s actions in March 1990 that police use of excessive force is a constitutional violation. McKinney v. DeKalb Cnty., 997 F.2d 1440, 1443 (11th Cir. 1993) (citing Gilmere v. City of Atlanta, 774 F.2d 1495, 1500-02 (11th Cir. 1985)). In McKinney, a police officer shot and wounded a teenager during an encounter in the teenager's bedroom. Although the

teenager was initially holding a knife, according to the plaintiffs, the teenager "had put down his knife and was merely shifting position, not threatening the safety of any persons, when [the o]fficer . . . shot him." Id. The Eleventh Circuit affirmed the district court's ruling denying summary judgment for that officer based on qualified immunity stating that "[u]nder these facts, [the o]fficer [wa]s not entitled to summary judgment on the ground of qualified immunity." Id. Thus, the law at the time of Mr. Alexis' shooting was clearly established that an officer may not use deadly force against an individual who posed no threat to the officer or others. See also Fitch v. Scott, No. 2:03-CV-465-FTM29DNF, 2005 WL 1925028, at *7 (M.D. Fla. Aug. 10, 2005) (denying summary judgment to officer based on qualified immunity and noting that "[o]fficers have been on notice since 1985 that deadly force would be justified only by a reasonable belief that they or the public were in imminent danger.") (citing Garner, 471 U.S. at 3); Salgado v. City of West Miami, 12-24458-cv, 2015 WL 500490, at *7 (S.D. Fla. Feb. 4, 2015) (on a summary judgment motion observing that "[i]t was clearly established on April 12, 2012, that 'unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment.'") (quoting Fils v. City of Aventura, 647 F.3d 1272, 1289 (11th Cir. 2011)). Here, Officer Carballosa had "fair warning" on the date of the shooting that his conduct violated the Fourth Amendment.

Based on the facts alleged in the First Amended Complaint, Mr. Alexis did not pose a threat of serious physical harm to Officer Carballosa or anyone else and there are no allegations to suggest that Mr. Alexis was suspected of having committed any crime, much less "a crime involving the infliction or threatened infliction of serious

physical harm." <u>Garner</u>, 471 U.S. at 11; <u>Vaughan</u>, 343 F.3d at 1323, 1329-30 (11th Cir.

2003) (noting that an officer may constitutionally use deadly force against a suspect

whom the officer reasonably believes (1) "poses a threat of serious physical harm to the

officer or others" or (2) has "committed a crime involving the infliction or threatened

infliction of serious physical harm."). The facts, as pled in the First Amended Complaint,

show that Officer Carballosa violated a clearly established constitutional right when he

shot and killed Mr. Alexis. Accordingly, Officer Carballosa is not entitled to qualified

immunity at this stage of the proceedings and his motion to dismiss on this ground

should be **DENIED**.

**3.      State Law Claims Against Miami-Dade County: Wrongful Death Against
        Miami-Dade County (Count III); Assault and Battery Against Miami-Dade
        County (Count V) and Negligent Failure to Train Against Miami-Dade
        County (Count VI)**

      **a.      Sovereign Immunity**

Miami-Dade County argues that all of the plaintiff's state law claims are barred

by the doctrine of sovereign immunity. <u>See</u> Miami-Dade County's Motion to Dismiss

Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23 at

13, 2/5/15). Subsection 768.28(9)(a) of the Florida Statutes provides "governmental

entities . . . with sovereign immunity from suit when certain tort causes of action are

brought against them." <u>Rance v. Jenn</u>, No. 06-61002-CIV, 2008 WL 5156675, *5 (S.D.

Fla. Dec. 9, 2008). Subsection 768.28(9)(a) provides in pertinent part:

> . . . The state or its subdivisions shall not be liable in tort for the acts or
> omissions of an officer, employee or agent ... committed in bad faith or
> with malicious purpose or in a manner exhibiting wanton and willful
> disregard of human rights, safety or property.

Fla. Stat. § 768.28. "Florida courts have routinely held that a governmental entity may

not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard for human rights, safety, or property." Moore v. Miami-Dade Cnty., 502 F. Supp. 2d 1224, 1235 (S.D. Fla. 2007).

The county notes that the facts as pled in the First Amended Complaint are that: "(1) Mr. Alexis was standing in front of his vehicle at his parents' home; and (2) for no apparent reason Officer Carballosa fired multiple rounds at Mr. Alexis, even as '[Mr.] Alexis attempted to turn around and go inside his parent's house.'" Miami-Dade County's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint (DE# 28 at 10, 2/25/15) (quoting First Amended Complaint DE# 17 at ¶¶ at 19, 20, 1/23/15)). The county argues that based on these facts it is entitled to sovereign immunity because "as alleged the acts of Officer Carballosa were so extreme as to constitute a clearly unlawful usurpation of authority the officer did not rightfully possess." Id. (citation, brackets and internal quotation marks omitted).

The plaintiff maintains that "[w]hether the Miami-Dade Police Officer was acting within the scope of his authority, thus subjecting MIAMI-DADE COUNTY to liability, is a factual proof issue to be determined by the jury, and cannot be resolved by a motion to dismiss." Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26 at 14, 2/19/15).

In Gregory v. Miami-Dade Cnty., this Court granted the county's motion to dismiss the plaintiff's state law claims based on sovereign immunity because the facts alleged in the complaint "'connote[d] conduct much more reprehensible and unacceptable than mere intentional conduct' and [could] only be characterized as

stating claims for acts done in bad faith or with malicious purpose or in a willful and

wanton manner." 2014 WL 7876231, at *3 (quoting Richardson v. City of Pompano

Beach, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987)). In Gregory, the plaintiff alleged

> Officer Perez approached [the plaintiff] from behind. For no apparent
> reason, [the plaintiff] was ordered by Officer Perez to get on the ground.
> [The plaintiff] was in the process of making himself prone on the ground
> with his back to Officer Perez when Officer Perez shot [the plaintiff]
> multiple times in the back with a firearm. [The plaintiff] posed no threat to
> Officer Perez at the time he was shot in the back multiple times, nor was
> he resisting Officer Perez in any way . . . At the time [the plaintiff] was
> repeatedly shot in the back by Officer Perez, [the plaintiff] was not
> committing a crime and had not threatened Officer Perez. [The plaintiff]
> did not engage in any conduct at the time he was shot that justified Officer
> Perez's use of any amount of force upon him – let alone deadly force.

Id. Similarly here, the Court should also dismiss the plaintiff's state law claims against

the county because the facts as pled in the First Amended Complaint establish that

Officer Carballosa acted maliciously, in bad faith, or showed reckless and wanton

disregard for human rights and safety. Moore, 502 F. Supp. 2d at 1235. As pled, the

facts alleged in the First Amended Complaint and incorporated by reference into each

of the plaintiff's state law claims against the county show that Officer Carballosa shot

Mr. Alexis without provocation or justification. While the plaintiff is permitted to plead in

the alternative, the plaintiff has not done so in her First Amended Complaint.

> **b.     Failure to State a Claim for Wrongful Death Against Miami-Dade
>         County (Count III) and Negligent Failure to Train Against Miami-Dade
>         County (Count VI)**

Miami-Dade County also seeks to dismiss the plaintiff's state law wrongful death

and negligent failure to train claims. See Miami-Dade County's Motion to Dismiss

Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23 at

13, 2/5/15). The county maintains that these claims "rely on conclusory allegations that

38

are not sufficient to state a proper cause of action under Twombly and Iqbal, and so are subject to dismissal." Miami-Dade County's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint (DE# 28 at 8, 2/25/15).

Additionally, the county argues that the Court should dismiss the plaintiff's wrongful death and negligent failure to train claims because the plaintiff is challenging "policy decisions regarding what to include in the training of its police officers – that is, the County's discretionary governmental functions which are immune from tort liability." The plaintiff argues that "the determination of whether a municipality is immune from liability for a wrongful death claim sounding in negligent training is not determined at the motion to dismiss stage, but is instead properly examined upon a presentation of the evidence to determine whether the claim is grounded on the governmental discretionary authority function." Plaintiff's Response in Opposition to Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 26 at 15, 2/19/15) (citing Cook, 402 F.3d at 1118-1119).

Assuming the plaintiff's wrongful death and negligent failure to train claims against the county are sufficient to meet the pleading standards of Iqbal and Twombly, the Court should still dismiss these claims because they challenge the county's discretionary function. The plaintiff's wrongful death claim against the county alleges that:

> Because of the failure of MIAMI-DADE COUNTY to properly train and supervise its police officers on the use of deadly forced, OFFICER CARBALLOSA breached the duties owed to David Alexis, conducting [himself] in a careless and negligent manner by shooting and killing David Alexis under circumstances in which a reasonable police officer would not have believed David Alexis, who was unarmed, posed an immediate threat of death or serious bodily harm to OFFICER CARBALLOSA or to

anyone else.

First Amended Complaint (DE# 17 at ¶61, 1/23/15). The plaintiff's state law negligent

failure to train claim against the county alleges that:

> 84. Defendants MIAMI-DADE COUNTY owed David Alexis, as well as all
> other residents of MIAMI-DADE COUNTY, a duty to properly train and
> supervise its officers regarding the procedures to make an arrest during a
> sting operation, the use of firearms when arresting an individual, the
> proper discharge of a firearm, and the use of deadly force.
>
> 85. Defendant MIAMI-DADE COUNTY breached this duty by failing to
> provide Defendant OFFICER CARBALLOSA with proper and special
> training so that [he] could be prepared to execute the necessary duties
> reasonably expected of [him] during the course and scope of the
> employment.

Id. at ¶¶ 84-85. Both claims allege that:

> 2. This is further an action against the MIAMI-DADE COUNTY, Florida, as
> the ultimate policymakers for the Miami-Dade Police Department and its
> officers. MIAMI-DADE COUNTY is responsible for the conduct, training,
> and supervision of the police  officers of the Miami-Dade Police
> Department, for their failure to properly and lawfully train police officers in
> the appropriate methods of use of force, surveillance, tracking, stopping,
> detaining, and taking individuals into custody.
>
>                         ***
>
> > 28. MIAMI-DADE COUNTY and the Miami-Dade Police
> > Department failed to adequately train, supervise, and control
> > its officers, including OFFICER CARBALLOSA, in the proper
> > use and application of deadly force. The failure to properly
> > train includes the failure to correctly instruct on the
> > applicable law, rules, and procedures concerning the lawful
> > use of deadly force, and the failure to take corrective or
> > disciplinary action upon notice of actions, conduct, or
> > practices that result in the unlawful and unnecessary use of
> > deadly force.

Id. at ¶¶ 2, 28.

In Gelbard v. City of Miami, 845 F. Supp. 2d 1338, 1340-41 (S.D. Fla. 2012),

this Court granted the county's motion to dismiss the plaintiff's negligent supervision

claims where they were premised on a discretionary function. Specifically, the court

noted:

> The [Eleventh Circuit in <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260,
> 1264 (11th Cir. 2001)] . . . analyzed the validity of [a negilgent failure to
> train and supervise] claim under a two prong analysis. . . . The first prong
> analyzes whether the plaintiff alleged sufficient facts under which the City,
> if a private entity, would be liable in accordance with the general laws of
> Florida. . . . Pursuant to <u>Lewis</u>, if the plaintiff meets the first prong, then
> the court must analyze whether the "discretionary" function exception to
> Florida's waiver of sovereign immunity nonetheless bars tort liability on the
> claim. <u>Id.</u>; <u>see also</u> Fla. Stat. § 768.28(1).
>
> ***
>
> Plaintiff's allegation of negligent failure to train and supervise fails the
> second prong of analysis because the activity complained of is a
> discretionary function and, therefore, [the city] is immune from liability. "A
> city's decision regarding how to train its officers and what subject matter to
> include in the training is clearly an exercise of governmental discretion
> regarding fundamental questions of policy and planning." <u>Lewis</u>, 260 F.3d
> at 1266. "Because Plaintiff challenges the reasonableness of basic policy
> decisions made by the City, the 'discretionary' function exception to the
> waiver of sovereign immunity applies and her claim is barred." <u>Id.</u> at 1266.
> As such, [city]'s decisions involving the training of its police force are
> considered a discretionary function.

Similarly here, because the plaintiff's wrongful death and state law negligent failure to

train claims, as pled in the First Amended Complaint, are premised on a discretionary

function of the county, both claims should be **DISMISSED**.

## 4.    Wrongful Death Against Officer Carballosa (Count IV)

The First Amended Complaint also asserts a wrongful death (Count IV) claim

against Officer Carballosa under Florida's Wrongful Death Act, Fla. Stat. § 768.16, <u>et</u>

<u>seq.</u> "Florida's Wrongful Death Act allows for recovery when the death of a person is

caused by, <u>inter alia</u>, negligence or a 'wrongful act,' which includes the use of excessive

41

force by a police officer." Fontanez v. Lamberti, No. 10-61428-CIV, 2011 WL 4499016,

at *14 (S.D. Fla. Sept. 27, 2011) (quoting Vaughn v. City Orlando, No. 6:07-cv-1695-

Orl-19GJK, 2009 WL 3241801, at *8 (M.D. Fla. Sept. 29, 2009)). However, "when a

plaintiff's allegations concern excessive force, the liability must arise from intentional

torts." Id. "Florida also recognizes a cause of action for the negligent handling of a

firearm and the negligent decision to use a firearm separate and distinct from an

excessive force claim." Id. (citations and internal quotation marks omitted).[16]

> Section 776.05 states in part:
>
> A law enforcement officer, or any person whom the officer has summoned
> or directed to assist him or her, need not retreat or desist from efforts to
> make a lawful arrest because of resistance or threatened resistance to the
> arrest. The officer is justified in the use of any force:
>
>> (1) Which he or she reasonably believes to be necessary to
>> defend himself or herself or another from bodily harm while
>> making the arrest.

Fla. Stat. § 776.05(1). Pursuant to section 776.05(1), "'[l]aw enforcement officers are

provided a complete defense to an excessive use of force claim where an officer

reasonably believes [the force] to be necessary to defend himself or another from bodily

harm while making the arrest.'" Fontanez, 2011 WL 4499016, at *14 (quoting Btesh v.

---

[16] The plaintiff's wrongful death claim against Officer Carballosa appears to be premised, at least in part, on his alleged negligent handling of a firearm. See First Amended Complaint (DE# 17 at ¶71, 1/23/15). The Court in Vaughn recognized that "[b]oth a claim for battery arising from excessive force and a claim for the negligent handling of a firearm turn on whether the amount of force used was reasonable under the circumstances." Vaughn, 2009 WL 3241801, at *8. In any event, Officer Carballosa is not entitled to the dismissal of the wrongful death count for the reasons stated herein.

City of Maitland, No. 6:10-cv-71-Orl-19DAB, 2011 WL 3269647, at *26 (M.D. Fla. July 29, 2011) (quoting City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3d DCA 1996))). "The question of whether or not deadly force was reasonable under section 776.05(1), as with the Fourth Amendment, is an objective inquiry." Id.

Officer Carballosa argues that: "Plaintiff's state law wrongful death claim is . . . subject to dismissal because Officer Carballosa's use of force was objectively reasonable under the circumstances." Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 2, 2/17/15). The circumstances alleged in the First Amended Complaint do not show that Officer Carballosa's use of deadly force against an unarmed individual who was not posing a threat to him or anyone else was objectively reasonable as discussed in the above analysis on qualified immunity. Accordingly, Officer Carballosa's request to dismiss the wrongful death (Count IV) claim against him should be **DENIED**.

## 5.    Dismissal of the Plaintiff's Claims Against Miami-Dade County Should Be Without Prejudice

Miami-Dade County asks that the claims asserted against it be dismissed with prejudice: "Plaintiff was given leave to amend her complaint and failed to cure the deficiencies raised in the County's motion to dismiss Plaintiff's original Complaint [D.E. 5], this Court should dismiss the Amended Complaint [D.E. 17] against the County with prejudice." Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23 at 17, 2/5/15).[17] This Court has

---

[17] Officer Carballosa also asks that the dismissal of the plaintiff's claims against him be with prejudice. See Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25 at 1, 2/17/15).

dismissed an amended complaint with prejudice where the plaintiff had previously voluntarily dismissed the original complaint and filed an amended complaint. See, e.g., Vila v. Miami-Dade Cnty., 2014 WL 6976273, at *10 n.1. This Court has also dismissed an amended complaint without prejudice where the Court had not addressed a specific claim in its prior order of dismissal. See Novoferreiro v. Israel, No. 14-CIV-62674, 2015 WL 2152682, at *5 (S.D. Fla. May 6, 2015) (permitting leave to amend where "the Court did not reach [a specific] issue in its previous Order" of dismissal).

Because the Court denied the initial motion to dismiss as moot and did not address the substantive, alleged deficiencies in the original complaint, it is the undersigned's RECOMMENDATION that the Court should provide the plaintiff with a final opportunity to correct the pleading deficiencies identified in this Report and Recommendation.

## RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully recommends that Miami-Dade County's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 23, 2/5/15) be **GRANTED** and that Officer Carballosa's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (DE# 25, 2/17/15) be **DENIED**. The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking

---

However and for the reasons stated in this Report and Recommendation, his motion to dismiss should be denied in its entirety.

on appeal the factual findings contained herein. See LoConte v. Dugger, 847 F.2d 745

(11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida

this **9th** day of June, 2015.

_____

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Moreno
All Counsel of Record

45