UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-23285-CIV-MORENO/MCALILEY

TRUDY MIGHTY, as Personal Representative
of the Estate of DAVID N. ALEXIS, deceased,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S**
***DAUBERT* MOTION TO LIMIT TESTIMONY OF DR. EMMA O. LEW**

Plaintiff filed a motion *in limine* to limit the testimony of defense expert Dr. Emma O. Lew under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[1] which the Honorable Federico A. Moreno referred to me. (ECF No. 243, 261). Defendant Miguel Carballosa filed a response and Plaintiff a reply. (ECF Nos. 250, 255). Having reviewed the parties' memoranda of law, the pertinent portions of the record and the applicable law, for the reasons explained below, I recommend that the Court grant Plaintiff's *Daubert* motion in part.

**I.    BACKGROUND**

This is an action under 42 U.S.C. § 1983 and Florida state law stems from Defendant

---

[1] 509 U.S. 579 (1993).

police officer Miguel Carballosa's fatal shooting of David N. Alexis. (ECF No. 89). Officer Carballosa has identified Dr. Emma O. Lew as his forensic expert. (ECF No. 183). Dr. Lew is a forensic pathologist employed with the Miami-Dade County Medical Examiner Department. (ECF No. 250-1). Officer Carballosa asked Dr. Lew to provide an expert opinion on two issues: (1) "what all the evidence indicates…regarding the shooting itself as well as the positions of the individuals involved…" and (2) "whether all the evidence is consistent with Officer Carballosa's testimony." (ECF No. 243-2 at 2).

Dr. Lew prepared a written report in which she offered opinions on those issues (the "Report"). (ECF No. 243-2). Plaintiff raises three *Daubert* challenges to Dr. Lew's anticipated testimony. She asks the Court first, to strike Dr. Lew's "expert witness opinion that blood was present in the middle of the street" because it is unreliable, and second, to strike her "police practices opinions" because she is not qualified to opine on that issue. (ECF No. 243 at 6-8). Regarding these two challenges, Dr. Lew states this in her Report:

> Blood was in the middle of the street northwest of the casings, indicating that Mr. Alexis had been at least that far south.
>
> ***
>
> Police undergo training to respond to deadly threats and may fire shots in rapid succession until the threat is neutralized. Their training prepares officers to react quickly when perceiving a threat – they do not have time to think and analyze their potential movements because any hesitation could mean that they and/or others will be injured or killed. When an officer is confronted with a perceived deadly threat and is in fear for his life, it is reasonable that he may not remember all the details of the incident.

(ECF No. 243-2 at 4). Officer Carballosa responds that Plaintiff's first challenge - to Dr. Lew's testimony regarding blood being present in the middle of the street - should be the subject of cross-examination at trial. (ECF No. 250 at 4). He argues that Plaintiff's second challenge is without merit because Dr. Lew has "extensive experience" with police-involved shootings and "experience interacting with law enforcement over the course of her 25-year career," which qualifies her "to describe how the training that officers receive plays out in a scenario where the physiological responses take over to allow a person to respond to a perceived threat." (ECF No. 250 at 4-5).

Third, Plaintiff asks the Court to limit Dr. Lew's testimony "to the opinions and materials relied upon in her expert witness report…." (ECF No. 243 at 9). Officer Carballosa responds that Plaintiff "does not identify what additional opinions or materials she is seeking to exclude" and that "any purported failure to supplement Dr. Lew's report to specifically enumerate additional materials is substantially justified or is harmless." (ECF No. 250 at 5).

## II. ANALYSIS

### A. Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the principles announced in *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court in *Daubert* instructed district courts to act as a gatekeeper to ensure that the expert's testimony is both reliable and relevant before it can be admitted under Rule 702. *Daubert*, 509 U.S. at 597. "The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596).

      The Eleventh Circuit Court of Appeals set forth a "rigorous three-part inquiry" that courts must engage in to perform their gatekeeping function. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Specifically, courts must consider whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* (citation omitted). The

Eleventh Circuit refers to these requirements as the "qualifications," "reliability," and "helpfulness" inquiries. *Id*. The proponent of expert testimony must demonstrate its admissibility by a preponderance of the evidence. *Allison*, 184 F.3d at 1306 ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.").

**B.     Dr. Lew's Statement Regarding Blood in the Middle of the Street**

Plaintiff asks the Court to "strike Dr. Lew's opinions as to blood being in the middle of the street" because "Dr. Lew fails to describe in detail any facts, data and methodology whatsoever upon which she relies in forming that opinion." (ECF No. 243 at 2, 7). That is, Plaintiff contends Dr. Lew's opinion is unreliable.

Plaintiff's *Daubert* challenge is flawed. Dr. Lew's statement that "[b]lood was in the middle of the street northwest of the casings" is a statement of fact. (ECF No. 243-2 at 4). Dr. Lew relies upon that asserted fact to reach her opinion that this "indicat[es] Mr. Alexis had been at least that far south." *Id.* Plaintiff's reliance on Rule 702 and *Daubert* is misplaced because the language that Plaintiff asks the Court to strike is not an expert opinion.

Had Plaintiff challenged Dr. Lew's opinion that "Mr. Alexis had been at least that far south," I would not be persuaded that it is unreliable. Contrary to Plaintiff's assertion, Dr. Lew did describe the factual basis of that opinion, namely that "blood was in the middle of the street northwest of the casings." *Id.* Dr. Lew also explained the evidence she relied upon, which were photographs from the crime scene. The following question and answer took place during Dr. Lew's deposition:

5

>   Q: And what is the factual basis for your statement that there is blood present in the middle of the road?
>
>   A: The presence of blood in the [crime scene] photographs.

(ECF No. 168-6 at 52:24-53:3).

Plaintiff argues that Dr. Lew recanted her statement that blood was in the middle of the street and "defer[d] to Detective Van Loan's opinion, which is that there was only blood in the swale and near the body of the victim, David Alexis." (ECF No. 243 at 7). This is not supported by the record. Dr. Lew testified that "[b]ut to recant something else I said earlier, I would defer to Officer Van Loan's observations at the scene because I was not at the scene." (ECF No. 168-6 at 69:2-5). Detective Van Loan, who took photographs at the crime scene the night of the shooting, did not testify whether he observed blood in the middle of the street. (*See Deposition of Frederick Van Loan*, ECF No. 237-2, generally). He testified that "[i]f there was blood in the street," he would have photographed it. (*Id.* at 35:2-4).

Plaintiff also claims that Det. Van Loan opined that "there was *only* blood in the swale and near the body of the victim." (ECF No. 243 at 7) (emphasis added). She does not, however, cite any deposition testimony to support this. In fact, Det. Van Loan was more general in his testimony. (ECF No. 237-2 at 36:5-12) ("Q:…did you photograph any blood in the area other than those two photographs of blood and a pool of blood and then the pool or pools of blood around the body of David Alexis? A: Well, *I haven't gone through the pictures to see if I have*, but if there's blood, then I take a picture of it.")

(emphasis supplied). This record does not support Plaintiff's claim that Dr. Lew recanted her statement that blood was in the middle of the street.

As a separate matter, Plaintiff disputes that the photographs depict blood in the middle of the street, arguing that neither the medical examiner on scene nor Det. Van Loan reported that blood was found in the middle of the street. (ECF No. 243 at 7). Whether Dr. Lew correctly characterized the crime scene photographs is a matter for cross-examination that goes to the weight, rather than the admissibility, of her opinion regarding the location of Mr. Alexis. "[W]eaknesses in the factual basis of an expert witness' opinion…bear on the weight of the evidence rather than on its admissibility." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993); *see also Coquina Investments v. Rothstein*, No. 10-60786-CIV, 2011 WL 4949191 at *8 (S.D. Fla. Oct. 18, 2011) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (citation omitted); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-CIV, 2011 WL 2295269 at *7 (S.D. Fla. June 8, 2011) ("Defendants' challenges to [the expert's] conclusions and the facts she relied on, go to their weight rather than their admissibility."); *Ostroski v. United States*, No. 06-80327-CIV, 2007 WL 9701868 at *2 (S.D. Fla. Aug. 23, 2007) ("Any claimed weakness in the factual basis for [expert's] conclusion…goes at best to weight and credibility, and can certainly be explored on cross examination.").

For these reasons, the Court should deny this portion of Plaintiff's Motion.

### C. Dr. Lew's Opinions Regarding Police Practices and an Officer's Physiological Response to a Perceived Deadly Threat

Plaintiff argues that Dr. Lew is not qualified to offer the following opinions:

> Police undergo training to respond to deadly threats and may fire shots in rapid succession until the threat is neutralized. Their training prepares officers to react quickly when perceiving a threat – they do not have time to think and analyze their potential movements because any hesitation could mean that they and/or others will be injured or killed. When an officer is confronted with a perceived deadly threat and is in fear for his life, it is reasonable that he may not remember all the details of the incident.

(ECF Nos. 243 at 7-8; 243-2 at 4). Plainly, some of these opinions concern police practices, namely the opinions that "[p]olice undergo training to respond to deadly threats and may fire shots in rapid succession until the threat is neutralized. Their training prepares officers to react quickly when perceiving a threat…." (ECF NO. 243-2 at 4). Officer Carballosa readily admits that "Dr. Lew will not be offering police practices opinions at trial." (ECF No. 250 at 4). Indeed, Dr. Lew testified that police procedures "is not my area of expertise." (ECF No. 243-1 at 44:23-45:1).

The remaining challenged opinions concern an officer's physiological response to a perceived deadly threat. (ECF No. 243-2 at 4). Dr. Lew obtained a Bachelor of Science degree in physiology in 1976, but her Curriculum Vitae makes no other reference to the discipline. (ECF No. 250-1). Not surprisingly, Officer Carballosa does not argue that she is qualified to render those opinions based upon her education or training. Instead, he argues that Dr. Lew is qualified based upon her "extensive experience" with police-

8

involved shootings and "experience interacting with law enforcement over the course of her 25 year career." (ECF No. 250 at 4-5).

Rule 702 provides that an expert can be qualified based upon "knowledge, skill [or] experience." However, "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Coquina Investments*, 2011 WL 4949191 at *1 (citation omitted) (emphasis in original). Dr. Lew has not offered such an explanation. Her report makes no mention of the "extensive experience" that Officer Carballosa refers to, much less explains how she reliably applied that experience to the facts of this case or how her experience supports the opinions she offers regarding an officer's physiological response to a perceived deadly threat. Nor does Officer Carballosa direct the Court to any deposition testimony where Dr. Lew does so. (ECF No. 250 at 4-5). The Advisory Committee Notes for Rule 702 instructs that "[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it." Fed. R. Evid. 702 advisory committee note (2000) (quotation marks omitted).

For the foregoing reasons, Officer Carballosa has failed to show that Dr. Lew is qualified to render the opinions set forth above and, therefore, those opinions should be excluded at trial.

### D. <u>Other Opinions or Materials Relied Upon</u>

Plaintiff asks the Court to limit Dr. Lew's testimony "to the opinions and materials relied upon in her expert witness report." (ECF No. 243 at 9). As Officer Carballosa points

9

out, Plaintiff does not explain what other opinions or materials she seeks to exclude, and Plaintiff did not address this in her Reply memorandum.

Plaintiff directs the Court to Dr. Lew's deposition transcript, where she asserts that Dr. Lew testified "that she plans on relying on materials that were not disclosed in her expert witness report in preparation for her courtroom testimony." (*Id*. at 10). In fact, Dr. Lew testified that she would *review* certain deposition transcripts that she received after completing her report, in preparation for trial testimony. (ECF No. 243-1 at 181:13-182:7). It is unknown whether Dr. Lew will rely upon those deposition transcripts to support her expert opinions, and thus Plaintiff's request to exclude Dr. Lew's reliance on that material is premature. There is also no evidence that Dr. Lew intends to offer any opinions other than those set forth in the Report. In effect, Plaintiff is asking the Court to issue an advisory opinion. Her complaints are better resolved at trial, if and when these issues arise.

### III.   RECOMMENDATION

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that the Court **GRANT IN PART** Plaintiff's *Daubert* Motion to Limit Testimony of Dr. Emma O. Lew (ECF No. 243) and exclude Dr. Lew's opinions that:

> Police undergo training to respond to deadly threats and may fire shots in rapid succession until the threat is neutralized. Their training prepares officers to react quickly when perceiving a threat – they do not have time to think and analyze their potential movements because any hesitation could mean that they and/or others will be injured or killed. When an officer is confronted with a perceived deadly threat and is in fear for his life, it is reasonable that he may not remember all the details of the incident.

**No later than 14 days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Federico A. Moreno, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 30th day of April, 2019.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Federico A. Moreno
    Counsel of record