UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-23285-CIV-MORENO/MCALILEY

TRUDY MIGHTY, as Personal Representative
of the Estate of DAVID N. ALEXIS, deceased,

      Plaintiff,

vs.

MIAMI-DADE COUNTY, *et al.*,

      Defendants.
_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON *DAUBERT* MOTIONS
REGARDING GERALD STYERS, JOHN MARRACCINI
AND ALEXANDER JASON**

Pending before the Court are two *Daubert* motions,[1] which the Honorable Federico

A. Moreno referred to me for a report and recommendation: (1) Defendant's Omnibus

Motion to Strike and Exclude Portions of the Testimony of Plaintiff's Experts Dr. John

Marraccini and Gerald Styers, and (2) Plaintiff's *Daubert* Motion to Strike Defense

Rebuttal Expert Witness Alexander Jason or, in the Alternative, to Exclude Opinions 1 and

2. (ECF Nos. 238, 242, 261). Both Motions are fully briefed. (ECF Nos. 249, 250, 252).

The Court held a hearing on the Motions on July 25, 2019. Having considered the parties'

memoranda of law, the applicable law, argument of counsel and the pertinent portions of

the record, I recommend that the Court grant in part Defendant's Omnibus Motion to

Exclude Portions of Testimony of Gerald Styers and Dr. John Marraccini (ECF No. 238)

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

and deny Plaintiff's *Daubert* Motion to Strike Alexander Jason or Exclude Opinions 1 and 2 (ECF No. 242).

## I.   BACKGROUND

Plaintiff is the personal representative of the estate of David N. Alexis. On October 2, 2012, Alexis had an encounter with Miami-Dade Police Officer Miguel Carballosa on the street in front of his residence, which ended when Officer Carballosa shot and killed Alexis. It is undisputed that Alexis's firearm was found on the roadway at the scene of the incident. However, the parties very much dispute how Alexis's firearm came to be where it was found. They also disagree about the locations and movements of Officer Carballosa and Alexis during the encounter.

Plaintiff brings this action, under Title 42 U.S.C. § 1983 and Florida state law, against Officer Carballosa in his individual capacity, and charges that he acted under color of law and used excessive force in violation of Alexis's rights under the Fourth Amendment, and the Due Process Clause of the Fourteenth Amendment, of the United States Constitution. (ECF No. 89). Both parties have retained their own medical, firearms and police practices experts to testify at trial. Some of those experts are the subject of the *Daubert* motions now before me.

In particular, Officer Carballosa seeks to exclude Plaintiff's firearms expert, Gerald Styers, and Plaintiff's forensic pathology expert, Dr. John Marraccini, under *Daubert* and Rule 403 of the Federal Rules of Evidence. (ECF No. 238). Plaintiff, in turn, seeks to exclude Defendant's rebuttal firearms expert, Alexander Jason, first, because he is not a rebuttal expert and Officer Carballosa did not timely disclose his report, and second,

because two of Jason's opinions do not satisfy the reliability and helpfulness requirements

of *Daubert*. (ECF No. 242). I address each expert in turn.

## II.   ANALYSIS

### A.   <u>Legal Standard</u>

Rule 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert* instructed district courts to act as a gatekeeper to

ensure that an expert's testimony is both reliable and relevant before it can be admitted

under Rule 702. *Daubert*, 509 U.S. at 597. Although the *Daubert* Court considered only

scientific evidence, the Court extended its ruling to testimony based on technical and other

specialized knowledge, in *Kumho Tire Co. Ltd., v. Carmichael*, 526 137, 141 (1999). The

ultimate objective of this gatekeeping function is "to make certain that an expert, whether

basing testimony upon professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

The Eleventh Circuit Court of Appeals set forth a "rigorous three-part inquiry" that courts must engage in to perform their gatekeeping function. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Specifically, courts must consider whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* (citation omitted).  The Eleventh Circuit refers to these requirements as the "qualifications," "reliability," and "helpfulness" inquiries. *Id.*

When conducting its *Daubert* analysis, the court must focus "solely on the principles and methodology [that experts employ], not on the conclusions they generate." *Allison v. McGhan Med'l. Corp.*, 184 F. 3d 1300, 1312 (11th Cir. 1999). "[I]t is not the role of the district court to make the ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Allison*, 184 F.3d at 1311 (quoting *Daubert*, 509 U.S. at 596).

The proponent of expert testimony must demonstrate its admissibility by a preponderance of the evidence. *Allison*, 184 F.3d at 1306. The decision whether to admit or exclude expert testimony is within the court's discretion, and the court enjoys "considerable leeway" when determining the admissibility of such testimony. *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).

### B. Defendant's Motion to Exclude Testimony of Gerald Styers and Dr. John Marracini

#### 1. Law of the Case

As a threshold matter, Plaintiff argues that Defendant's *Daubert* motion should be denied because this Court and the Eleventh Circuit previously decided, when denying Officer Carballosa's motion for summary judgment based on qualified immunity, that the opinions of Styers and Dr. Marraccini are admissible. (ECF No. 249 at 15-17). Plaintiff asserts that law of the case doctrine applies and prevents this Court from revisiting the admissibility of their expert testimony. (*Id*. at 15-16).

"Under the law of the case doctrine, both the district court and the appellate court are generally bound by a prior appellate decision of the same case." *Oliver v. Orange County, Fla.*, 456 Fed. App'x 815, 818 (11th Cir. 2012). The doctrine, however, is limited in that it "bars consideration of only those legal issues that were actually, or by necessary implication, decided in the former proceeding." *Id*. Neither this Court nor the Eleventh Circuit explicitly analyzed, or addressed by implication, whether the opinions of Styers and Dr. Marraccini were admissible under *Daubert*. (*See* ECF Nos. 204, 218, 231).

At the *Daubert* hearing, Plaintiff argued that the Eleventh Circuit necessarily decided the admissibility issue by implication because, if the Court believed her experts' opinions were inadmissible, it would have reversed this Court's denial of summary judgment. I am not persuaded.

This Court relied upon *factual findings* of various experts in this case, including Defendant's forensic expert, to conclude that "genuine issue [*sic*] of material facts exist as to whether Officer Carballosa's use of deadly force was objectively unreasonable…" which made summary judgment inappropriate. (ECF No. 204 at 13). As for his appeal of that ruling, Officer Carballosa did not ask the Eleventh Circuit to exclude, under *Daubert*, the opinions of Styers and Dr. Marraccini. Instead, he argued that their opinions did not create a disputed issue of fact.

The Eleventh Circuit, in its decision affirming the denial of summary judgment, did reference, in the Background Section, Styers' opinion that "there was evidence to support an inference that Alexis was not holding a gun at the time he was shot."[2] (ECF No. 231 at 7-8). The Eleventh Circuit went on to conclude that *"[v]iewing the facts in the light most favorable to Plaintiff, we must assume* that Alexis was not holding a gun…meaning that there is a disputed issue of fact as to whether Plaintiff posed a threat to Defendant when Defendant shot him." (*Id* at 12) (emphasis added). In its opinion, the Eleventh Circuit did not determine the admissibility of Styers' opinion, either directly or by implication.

---

[2] The Eleventh Circuit did not mention Dr. Marraccini at all in its opinion. (ECF No. 231).

In a similar case, *Oliver v. Orange County, Fla,* the Eleventh Circuit considered whether its prior decision, affirming denial of summary judgment based upon qualified immunity, operated as law of the case to bar the district court from later excluding the plaintiff's expert under *Daubert.* 456 Fed. App'x 815 (11th Cir. 2012). There, as here, the prior appeal referenced the opinion of plaintiff's expert, which the lower court later excluded. The Eleventh Circuit reasoned that in the prior appeal,

> we resolved all issues of material fact in favor of the plaintiff, and as relevant here, simply recited from the record that existed at the time that Dr. Rudner's expert report had opined to a reasonable degree of medical certainty about the cause of Oliver's death. Notably, however, we were not asked to address, and did not address, any arguments concerning whether Dr. Rudner's expert report used reliable methodology or otherwise passed muster under *Daubert.*

*Id.* at 818. The Court held that "because no *Daubert* issues were actually, or by necessary implication, decided in the first appeal, the law of the case doctrine did not apply." *Id.*

As in *Oliver,* I conclude that law of the case doctrine does not require this Court to deny Officer Carballosa's *Daubert* motion.

### 2. <u>Gerald Styers</u>

Officer Carballosa challenges the following opinions of Styers:

1. Based upon the fired cartridge case ejection pattern tests that were performed it is more likely that Police Officer Miguel Carballosa was near the middle of the street, northern direction, when he fired his pistol.

2. It is unlikely Mr. Alexis was in possession of the alleged pistol at the time Police Officer Miguel Carballosa fired his pistol.

(ECF No. 238-1 at 11). I address each opinion in turn.

a.   Styers's Opinion Regarding the Location of Officer Carballosa

Styers utilized ejection pattern analysis to reach his conclusion regarding the location of Officer Carballosa when he fired his weapon. Officer Carballosa argues that Styers's ejection pattern analysis is not based upon a reliable methodology. (ECF No. 238 at 4-7). Styers conducted his ejection pattern testing by firing Officer Carballosa's firearm using two methods: a tripod (tests 1-5) and offhand shooting (tests 6-13). (ECF No. 238-1 at 8-10).[3] At the *Daubert* hearing, Officer Carballosa confirmed that he does not challenge the tripod methodology.

The only issue then is whether Plaintiff has established that offhand shooting is a reliable methodology. Officer Carballosa questioned Styers regarding the use of off-hand shooting at his deposition, as reflected in this exchange: "Q: Is shooting offhand within the accepted standard for performing this kind of test? A: It depends on the circumstance." (ECF No. 238-2 at 170: 22-24). Styers did not thereafter explain the circumstances that would render offhand shooting a reliable methodology, nor whether those (unidentified) circumstances were present in this case. Instead, Styers gave reasons why it was "to our benefit" to conduct offhand shooting. (*Id*. at 170:25-171:10).

Counsel for Officer Carballosa gave Styers another chance to validate the offhand shooting methodology:

Q: Have you ever conducted an ejection pattern analysis by shooting offhand before?

---

[3] In the former tests, the testers rested the firearm on a fixed tripod set at a specific height, and in the latter tests, they discharged the firearm while moving and noted the approximate height.

A: Yes

Q: Okay. Is that part of accepted standards for ejection pattern analysis?

A: Well, there's no other way of knowing how far –if I had no other way of knowing how far the firearm was held from the ground surface, I'd have to do my normal position in firing, and then basically just determine in what direction to the right, how far they went to the right and to the rear, what was the ejection pattern itself, which way it was going; to the right or to the rear or forward.

(*Id.* at 196:23-197:10). Officer Carballosa did not answer the question. Again, he explains why he chose to use an offhand shooting methodology, but not why or how that methodology is reliable. To the extent that Styers relies upon his prior experience to justify the offhand shooting methodology, he does not provide any information about those prior instances and how they compare to this case. "If the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Coquina Investments v. Rothstein*, No. 10-60786-Civ, 2011 WL 4949191 at *1 (S.D. Fla. Oct. 18, 2011) (citation omitted) (emphasis in original).

Styers also could not point to any literature that explains the circumstances when offhand shooting is a reliable methodology:

Q: Do you know of any publication, whether journal, book or otherwise, that describes ejection pattern analysis with offhand shooting?

A: Did you say books?

Q: I mean publications. Anything that's been printed.

A: I don't know if there's anything in the journal, the AFTE journal, that does address that, or, you know, I can't – I can't answer that question. I don't know for sure.

(ECF No. 238-2 at 198:7-16).

It is Plaintiff's burden, as the proponent of Styers's testimony, to demonstrate that the offhand shooting methodology is reliable. *See Allison*, 184 F.3d at 1306 ("The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence."). On this record, despite multiple opportunities, Plaintiff failed to satisfy this burden. Defendant's *Daubert* motion clearly argued that Styers's opinion should be excluded because he failed to identify any standard practices to support his use of the offhand shooting methodology, and cited much of the same deposition testimony discussed above. (ECF No. 238 at 5). Yet Plaintiff did not address this argument in her Response, nor direct the Court to any contrary testimony. (ECF No. 249).

Following the *Daubert* hearing, the Court asked Plaintiff to file a supplement to her Response, identifying where in Styers's deposition he explained the circumstances which render offhand shooting a reliable methodology. (ECF No. 288). Plaintiff referred to the same deposition testimony discussed herein, as well as an article that Styers referenced at his deposition, which he noted concluded that "one has to be very cautious"[4] in rendering opinions based upon ejection pattern testing. (*See* ECF No. 290, 290-1, 290-2). Plaintiff does not direct the Court to any portion of that article that explains when offhand shooting is a reliable methodology. (ECF No. 290 at 4). Indeed, the article itself seems to question the usefulness of ejection pattern testing with its conclusion that "determining shooter

---

[4] ECF No. 238-2 at 17:9-18:15.

location from the spent cartridge case alone leads only to a tentative estimate of the shooter's location." (ECF No. 290-2 at 2).

The Court is mindful that its role is limited to acting as a gatekeeper. However, "[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it." *Coquina Investments*, 2011 WL 4949191 at *1 (quotation marks and citations omitted). Styers testified that whether offhand shooting is within the accepted standard for performing ejection pattern testing "depends on the circumstance". Without explaining under what circumstances offhand shooting is a reliable methodology, Plaintiff is asking the Court to "simply take [her] expert's word for it" – something the Court cannot do.

Plaintiff complains that "[i]t is difficult to imagine how else [other than using offhand shooting] a Forensic Firearm Expert would perform ejection pattern analysis." (ECF No. 290 at 5). This does not address the question: has Plaintiff shown that offhand shooting is a reliable methodology? Plaintiff's expert testified that the answer to that question depends on the circumstances, but failed to explain what those circumstances are. It is Plaintiff's burden to demonstrate by a preponderance of the evidence that her expert utilized a reliable methodology. For the reasons explained above, I conclude that Plaintiff has not met her burden.

Given that Styers's opinion regarding the location of Officer Carballosa is also based upon his use of the tripod methodology, which Defendant does not contest, there is no basis to exclude his opinion in its entirety. I therefore recommend that the Court preclude Styers from relying upon ejection pattern tests 6-13 (which used offhand

shooting) to support his opinion, and limit the basis of Styers's opinion to tests 1-5, which used the tripod methodology.

### b. Styers's Opinion Regarding the Location of Alexis's Firearm

Styers opined that "[i]t is unlikely Mr. Alexis was in possession of the alleged pistol at the time Police Officer Miguel Carballosa fired his pistol." (ECF No. 238-1 at 11). Officer Carballosa construes the opinion this way: "Mr. Styers opines that the Springfield gun could not have been thrown or tossed from David Alexis's hands because of the absence of sufficient damage on the surface of the gun." (ECF NO. 238 at 8). Regardless, Officer Carballosa argues that Styers's opinion is not based upon any reliable methodology or testing. (ECF No. 238 at 8). I disagree.

At deposition, Styers repeatedly testified that in his experience, a gun has physical damage after being thrown onto an asphalt roadway, yet Alexis's gun had no such damage. For example, he explained that "[b]ased upon tests that I have done and also working on the various cases, when the gun was thrown onto an asphalt roadway, it was always very abraised [sic] and scratched and [had] deep gouges, and also trace materials adhering to it, embedded into the gun" and, therefore, "the lack of any such damage" on Alexis's gun makes it "very unlikely" that his gun was thrown. (*See* ECF No. 238-2 at 260:16-24); (S*ee also,* 255:25-258:3, 259:2-13).

Contrary to Defendant's assertion, Styers offered a reliable foundation for his opinion – prior experience. A district court "may determine the reliability prong under *Daubert* based primarily upon an expert's experience and general knowledge in the field. . . . " *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1336 (11th Cir. 2010). However, as mentioned

above, the expert must have appropriately explained how his experience leads to the conclusions reached, why that experience provides a sufficient basis for the opinions, and how that experience is reliably applied to the facts. *Coquina Investments*, 2011 WL 4949191 at *1. After carefully reviewing Styers's deposition transcript, the Court is satisfied that he sufficiently explained how his experience supports his opinions. Accordingly, I recommend that the Court deny Defendant's motion to exclude Styers's opinion that "[i]t is unlikely Mr. Alexis was in possession of the alleged pistol at the time Police Officer Miguel Carballosa fired his pistol." (ECF No. 238-1, at 7).

### 3. Dr. John Marraccini

At the *Daubert* hearing, the parties significantly narrowed the scope of Defendant's motion to exclude Dr. Marraccini's testimony. Dr. Marraccini's expert report contains a section titled "Findings and Opinions" that includes lettered paragraphs (a) through (ff). (ECF No. 238-3 at 11-14). The parties agreed that the following paragraphs are no longer at issue in Defendant's *Daubert* motion, either because they are statements of fact or Plaintiff agreed that Dr. Marraccini will not offer those opinions at trial: (b), (c), (d), (m), (p), (z), (bb),[5] (cc), (ee). Plaintiff also agreed that Dr. Marraccini will not offer opinions at trial regarding police practices or the adequacy of the post-shooting investigation, and confirmed that his statements at the end of his report that (i) "Alexis was unarmed when he was hit by the officer's shots, and that four of five shots were received by Alexis after

---

[5] Plaintiff agreed to strike the last sentence of paragraph (bb), which states that "[t]his reduces the likelihood of lethal intent on the part of Alexis." The remainder of paragraph (bb) are statements of fact, not expert opinions.

he turned to retreat" and (ii) "[t]he position of Alexis' firearm at the scene suggests an after action movement or placement of the weapon by unknown parties", (*Id*. at 15), are not separate opinions that Marraccini will offer at trial. Accordingly, of the opinions that Defendant challenged in his Motion, the parties' dispute has since been limited to the following paragraphs of Dr. Marraccini's report: (o), (w), (x), (y), (aa) and (ff).

Paragraph (o) states that "[t]he victim's gun does not have a round in the chamber, and has no *scuff marks, dents*, blood, or tissue transfer visible to the naked eye." (ECF No. 238-3 at 12) (emphasis added). At the *Daubert* hearing, Officer Carballosa challenged only the emphasized language, arguing that Dr. Marraccini, as forensic pathologist, is not qualified to identify whether scuff marks or dents were visible on Alexis's gun. Dr. Marraccini testified that he worked with firearms examiners during his employment as a medical examiner in Palm Beach County, Florida. (ECF No. 238-4 at 22:14-23:3). Dr. Marraccini also testified that he examined Alexis's gun, and his statement regarding the absence of scuff marks and dents recounts his observations. (*Id*. at 242:14-20, 246:22-247:8). I agree that the reference to "scuff marks" and "dents" in paragraph (o) are factual statements and, even if opinions, Dr. Marraccini is qualified to render them based upon his prior experience.

Officer Carballosa argues that the remaining paragraphs in dispute -- (w), (x), (y),[6]

---

[6] At the *Daubert* hearing, the parties agreed that paragraph (y) consists of factual statements, except for the second sentence which states "[t]his is not consistent with the scene photos." It is this sentence which Officer Carballosa contends is a cumulative opinion.

(aa)[7] and (ff) – should be excluded under Rule 403 of the Federal Rules of Evidence because they are cumulative of the opinions of Plaintiff's other experts, Gerald Styers and Joseph Stine. (ECF No. 238 at 12-13). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … needlessly presenting cumulative evidence." Fed. R. Evid. 403. Officer Carballosa is correct that the challenged paragraphs echo opinions of Plaintiff's other experts, and Plaintiff acknowledged at the *Daubert* hearing that Dr. Marraccini is not offering any additional opinions of his own in the challenged paragraphs. Nevertheless, "the fact that [experts'] testimony and opinions may overlap to some extent does not demonstrate a sufficient basis of … needless presentation of cumulative evidence under Fed. R. Evid. 403 to bar the testimony of either witness." *Bodner v. Royal Caribbean Cruises, Ltd.*, No. 17-20260, 2018 WL 2471215 at *5 (S.D. Fla. April 10, 2018) (citation omitted). It is premature for the Court to exclude the challenged paragraphs of Dr. Marraccini's report because Plaintiff's other experts have not yet testified. "At this stage in the proceedings, the Court cannot determine whether the challenged opinions will be cumulative, and even if they are, whether the danger of 'needlessly' presenting cumulative evidence substantially outweighs its probative value under Rule 403." *Id*. Accordingly, I recommend that the Court deny

---

[7] Only the first sentence in paragraph (aa) is arguably cumulative. The second sentence of paragraph (aa), which addresses Alexis's gunshot wounds, is squarely within Dr. Marraccini's area of expertise, and Officer Carballosa made no specific argument that this sentence should otherwise be excluded under *Daubert*.

Defendant's motion to exclude paragraphs (w), (x), (y),[8] (aa)[9] and (ff) under Rule 403 without prejudice to Defendant raising this objection at trial.

### C.   Plaintiff's Motion to Exclude the Testimony of Alexander Jason

Officer Carballosa identified Alexander Jason as its rebuttal firearms expert. Plaintiff makes two arguments why the Court should exclude Jason's report: (1) it is untimely because Opinions 1 and 2 "are not rebuttal opinions but rather affirmative expert witness testimony…" and (2) Opinions 1 and 2 are unreliable and unhelpful under *Daubert*. (ECF No. 242 at 1-2). Opinions 1 and 2 state, respectively, that "[t]he location of the pistol (on the street) is consistent with Officer Carballosa's description of the incident" and "[t]he location of the casings are consistent with Officer Carballosa's description of the incident." (ECF No. 242-1 at 4, 7). I address each argument in turn.

### 1.   Jason's Report is a Bona Fide Rebuttal Report

Testimony of a rebuttal witness is permitted under Rule 26 only if it "is intended solely to contradict or rebut evidence on the same subject matter identified by [an opposing expert]." Fed. R. Civ. P. 26(a)(2)(D)(ii). Opinions 1 and 2 of Jason's report expressly contradict or rebut the subject matter of the expert report submitted by Plaintiff's firearms expert, Gerald Styers. Those opinions repeatedly reference Styers, quote certain of his opinions and provide various reasons why Jason believes that Styers's opinions are incorrect. (ECF No. 242-1 at 4-9). *See Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274 at *17-18 (M.D. Fla. Oct. 25, 2013) (rejecting

---

[8] *See supra* note 6.

[9] *See supra* note 7.

argument that rebuttal report "is in reality an original report" where rebuttal report "[took] the form of alternating quotations from [opposing expert's] report and critiques of those passages by [rebuttal expert].").

Plaintiff relies upon an out-of-Circuit case for the proposition that an expert witness cannot be a rebuttal witness where his purpose is "to contradict **an expected and anticipated** portion of the other party's case-in-chief." (ECF No. 242 at 6) (emphasis in original) (quoting *Amos v. Makita U.S.A., Inc.*, No. 2:09-cv-01304 GMN-RJJ, 2011 WL 43092 at *2 (D. Nev. Jan. 6, 2011). *Amos* is not persuasive because, unlike the expert report in that case, Jason's Opinions 1 and 2 are limited to the subject matter of Styers's expert report. As another court in this Circuit noted about the expert disclosure deadlines in Rule 26:

> The rules do not require parties or their expert witnesses to anticipate all foreseeable opposing arguments and meet those arguments in their initial [expert] reports. Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material. All that is required [of a rebuttal report] is for the information to repel other expert testimony.

*Teledyne Instruments, Inc.*, 2013 WL 5781274 at *17 (citations omitted). Opinions 1 and 2 of Jason's report meet this standard.[10]

Because Jason's report is a bona fide expert report, it is timely. Accordingly, Plaintiff's motion to exclude Jason's report as untimely should be denied. The Court should

---

[10] Plaintiff has made no argument that Opinions 3 and 4 are affirmative expert opinions, rather than rebuttal opinions. For the sake of completeness, the Court has reviewed Opinions 3 and 4 and conclude that they rebut the subject matter of Styers' report and are rebuttal opinions.

also deny Plaintiff's request that she be allowed to depose Jason if the Court determines that Plaintiff timely served his report. (ECF No. 242 at 13). Officer Carballosa did properly serve Jason's report on January 23, 2017, one week before the deadline to complete discovery. Plaintiff could have, but did not, depose Jason before discovery closed, and she did not ask for an extension of time to do so. Plaintiff has offered no justification for discovery at this late stage of the proceedings.

### 2. Opinions 1and 2 Satisfy the Reliability and Helpfulness Prongs of *Daubert*

Plaintiff argues that Opinions 1 and 2 of Jason's report are speculative because they "are based solely upon his review of various homicide file reports, photographs, and reports of Plaintiff's expert witness" (*Id.* at 8), and because they mischaracterize Officer Carballosa's testimony and Styers' report. (*Id.* at 8-10). The fact that Jason relied on documentary evidence does not render his opinions speculative, and Plaintiff offers no authority to the contrary. *See e.g., Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, et al.*, No. 09-61490-Civ, 2011 WL 2295269 at *7 (S.D. Fla. June 8, 2011) (denying *Daubert* motion where expert "considered the documents that the parties filed in his case and the documents provided in discovery" to prepare her report). Moreover, "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." *Id.* (where movant challenged facts the expert relied upon, the court nonetheless allowed the expert to testify, finding the expert's testimony was sufficiently reliable and helpful to the trier of fact, and the movant could address these concerns at trial); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based

on that analysis are factual matters to be determined by the trier of fact…"); *Coquina Investments*, 2011 WL 4949191 at *8 ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.").

With respect to Opinion 1, Plaintiff makes the additional argument that Jason did not rely upon any facts, but rather used speculative hypotheticals that render his opinion unreliable and unhelpful. (ECF No. 242 at 11-12). In Opinion 1, Jason critiques Styers's opinion that it is unlikely Alexis possessed a firearm at the time Officer Carballosa fired his pistol. (ECF No. 242-1 at 4-6). Jason offers reasons why Styers's opinion, which is based on the location of Alexis' firearm amongst the fired cartridge casings, is flawed:

- "If the decedent held a firearm, he could have dropped it at any point during his travel from a location near Officer Carballosa's truck to his final location."

- "The pistol may have been simply released or it may have been projected ("tossed") in response to a startle reaction upon bullet impact. If the pistol was simply released from a grip, it might have fallen straight down…This means the location of the pistol may not be directly associated with the decedent's location."

- "A semi-automatic pistol striking a hard, unyielding surface may also bounce somewhat after the initial contact, further confounding any attempt to define the drop location."

(ECF No. 242-1 at 6). Plaintiff challenges these statements as "purely speculative hypotheticals." (ECF No. 242 at 12).

In his rebuttal opinion Jason points out possibilities that could explain the location of Alexis's gun, that Styers did not address in his opinion. This is permissible because, as a rebuttal expert, Jason is permitted to offer possible alternative explanations. *See Capitol*

19

*Records, Inc. v. Thomas-Rassett*, No. 06-1497, 2009 WL 1664468 at *6 (D. Minn. June 11, 2009). Plaintiff's criticisms of Jason's alternative explanations are a matter for cross-examination.

Hypotheticals also need not doom an expert opinion:

> While [the expert's] opinions may be based on hypothetical situations, this does not mean that those opinions are speculative. [His] opinions are allegedly based on his detailed review of certain evidence…. To the extent [movant] challenges [the expert's] opinions, it will have the opportunity to challenge those opinions during the trial of this case.

*Quorum Health Resources, LLC v. Hospital Authority of Wayne County, Ga.*, No. CV208-042, 2010 WL 11537684 at *2 (S.D. Ga. Feb. 17, 2010). To the extent that the statements Plaintiff challenges are hypotheticals, Jason's report reflects that they are based upon his review of the evidence, including Officer Carballosa's testimony and the crime scene photographs. (ECF No. 242-1 at 3, 5-6).

Plaintiff also argues that Opinion 2 is speculative because it is based upon a hypothetical. (ECF No. 242 at 12). In Opinion 2, Jason states that "Syters' opinion regarding the significance of the location of the fired cartridge casings is invalid." (ECF No. 242-1 at 7). Jason offers several bases for his opinion, one of which addresses the presence of a Chevy Silverado white pickup truck that was parked behind where Officer Carballosa stood when he shot Alexis. Jason states that "some of the ejected casings could have struck the truck body and bounced off." (*Id.* at 8). Plaintiff challenges this, arguing that Jason "provides no facts or data to support this hypothetical and provides no indication from the physical evidence that this did indeed happen." (ECF No. 242 at 12). I disagree. Jason bases his conclusion on the location of the pickup truck, depicted in crime scene

photos, the dimensions of the truck and the results of certain ejection tests that Styers included in his report. (ECF No. 242-1 at 7-8). Contrary to Plaintiff's assertion, to the extent that the challenged statement is a hypothetical, it is not speculative because there is a factual basis to support it.  Again, Plaintiff may address this through cross-examination at trial.

For the foregoing reasons, I conclude that Jason's Opinions 1 and 2 should not be excluded under *Daubert*.

## III.    RECOMMENDATION

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that the Court **GRANT IN PART** Defendant's Omnibus Motion to Strike and Exclude Portions of Testimony of Plaintiff's Experts, Dr. John Marraccini and Gerald Styers, (ECF No. 238), as follows:

(1) the Court **ADMIT** Gerald Styers' opinion that "it is more likely that Police Officer Miguel Carballosa was near the middle of the street, northern direction, when he fired his pistol" but **LIMIT** the basis of that opinion to ejection pattern tests numbers 1 through 5, which utilized the tripod methodology;

(2) the Court **DENY** Defendant's Motion to exclude the opinion of Gerald Styers that "[i]t is unlikely Mr. Alexis was in possession of the alleged pistol at the time Officer Carballosa fired his pistol"  and

(3) the Court **DENY** Defendant's Motion to exclude Dr. John Marraccini's opinions

expressed in paragraphs (o), (w), (x), (y),[11] (aa)[12] and (ff) of his report.

I **FURTHER RECOMMEND** that the Court **DENY** Plaintiff's *Daubert* Motion to Strike Defense Rebuttal Expert Witness Alexander Jason, or in the Alternative, to Exclude Opinions 1 and 2. (ECF No. 242).

## IV.  OBJECTIONS

**No later than seven (7) days from the date of this Report and Recommendation** the parties may file written objections to this Report and Recommendation with the Honorable Federico A. Moreno, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 9th day of August, 2019.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Federico A. Moreno
    Counsel of record

---

[11] *See supra* note 6.

[12] *See supra* note 7.