**FILED BY HH D.C.**

**Nov 10, 2021**

**ANGELA E. NOBLE**
**CLERK U.S. DIST. CT.**
**S. D. OF FLA. - MIAMI**

# UNITED STATES COURT OF APPEAL
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 10, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  19-15052-DD
Case Style: Trudy Mighty v. Miami-Dade County, et al
District Court Docket No: 1:14-cv-23285-FAM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**

_____

No. 19-15052

_____

District Court Docket No.
1:14-cv-23285-FAM

TRUDY MIGHTY,
as personal representative of the Estate
of David N. Alexis, deceased,

Plaintiff - Appellant,

versus

MIAMI-DADE COUNTY,
a Political subdivision of the State of
Florida,
MIGUEL CARBALLOSA,
in his Individual and Official Capacity
as Miami-Dade County Police Officer,

Defendants - Appellees,

JOHN AND JANE DOES 1-2,
in their individual and official capacities
as Miami-Dade County Police Officers,
et al.,

Defendants.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: September 03, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15052
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-23285-FAM

TRUDY MIGHTY,
as personal representative of the Estate
of David N. Alexis, deceased,

                                                        Plaintiff - Appellant,

versus

MIAMI-DADE COUNTY,
a Political subdivision of the State of
Florida,
MIGUEL CARBALLOSA,
in his Individual and Official Capacity
as Miami-Dade County Police Officer,

                                                        Defendants - Appellees,

JOHN AND JANE DOES 1-2,
in their individual and official capacities
as Miami-Dade County Police Officers,
et al.,

                                                        Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 3, 2021)

Before JILL PRYOR, LAGOA, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Trudy Mighty is the personal representative of the estate of David Alexis who was shot and killed by defendant Miguel Carballosa, an officer in the Robbery Intervention Detail at the Miami-Dade Police Department.  Plaintiff brought this lawsuit against Defendant in his individual and official capacities, asserting two claims:  a § 1983 claim alleging that Defendant violated the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and a Florida law wrongful death claim.

We affirmed the district court's denial of Defendant's motion to dismiss on qualified immunity grounds.  *See generally Mighty v. Miami-Dade Cty.*, 659 F. App'x 969 (11th Cir. 2016).  We also affirmed the district court's denial of Defendant's motion for summary judgment, finding that he is not entitled to qualified immunity on the § 1983 claim.  *See generally Mighty v. Miami-Dade Cty.*, 728 F. App'x 974 (11th Cir. 2018).  That ruling sent the case back to the district court for a trial.

2

Following a five-day trial, the jury returned a verdict in favor of Defendant and the district court entered judgment.  On appeal, Plaintiff challenges several evidentiary rulings made by the district court.  After careful review, we find the district court acted within its discretion in issuing the challenged evidentiary rulings and affirm the judgment.

## I.      BACKGROUND

### A.      Factual Background

The facts leading up to the encounter between Defendant and Alexis are not in dispute.  Our previous decisions recount those facts, which we now summarize.

On October 2, 2012, Defendant established a surveillance point near the residence of a suspect that had earlier fled from police in a vehicle.  Defendant observed the residence from a white, unmarked pick-up truck parked a few houses down from the suspect's residence.

At around 11:15 pm, while Defendant was conducting surveillance, Alexis pulled a car into his parent's home across the street from where Defendant was parked.  Alexis's car did not match the description of the car from the traffic stop and Alexis was not pulling into the home of the suspect.  Alexis was going home from work to change his clothes, and then Alexis and his friend and sometime girlfriend, Yalysher Acevedo, were planning to go to the beach to talk and have dinner.

After Alexis pulled into his house, he walked across the street towards Defendant's vehicle parked on the south side of the street. Defendant stated that while Alexis was walking towards him, Alexis's right hand was concealed behind his back and thus Defendant could not see that hand. Alexis looked through Defendant's front windshield. Defendant stated he then rolled down his window, identified himself as a police officer, and said "Let me see your hands." According to Defendant, Alexis said nothing, did not comply with Defendant's commands, and instead backed away with his right hand still concealed behind his back. As Alexis was backing away, Defendant exited his vehicle, and, as recounted by Defendant, Alexis brought his right hand around, revealing that he was holding a gun. Defendant stated that Alexis was holding his gun "outward, low, ready and it appeared like it was coming upwards." Defendant stated that when he saw Alexis's gun, he immediately discharged his weapon, firing multiple times and killing Alexis. Defendant fired the first shot at the front of Alexis's body. However, the remaining shots were to Alexis's side and back. At the conclusion of the shooting, Alexis's body rested on the north side of the street away from Defendant's truck.

Investigating officers discovered that Alexis had a concealed carry permit and found a gun registered to Alexis on the street. The gun was found in close

proximity to the spent shell casings from Defendant's gun, which were scattered on the south side of the roadway near Defendant's truck.

### B.    Procedural History

Prior to his death, Alexis had fathered a child.  Plaintiff, who is the mother of this child, brought claims on behalf of Alexis's estate against Defendant in both his individual and official capacities.  Plaintiff alleged that Defendant used excessive force in violation of Alexis's Fourth Amendment rights under 42 U.S.C. § 1983 and is liable for wrongful death under Florida law.  Plaintiff alleged that Alexis arrived at his parents' home and was confronted and shot by Defendant as Alexis stood unarmed.

### 1.    Defendant Unsuccessfully Seeks Qualified Immunity

Defendant moved to dismiss Plaintiff's claims arguing that the alleged facts were insufficient to allow the court to draw a reasonable inference that Defendant acted unreasonably in shooting Alexis.  The district court denied the motion and we affirmed.  *Mighty v. Miami-Dade Cty.*, 659 F. App'x 969, 972 (11th Cir. 2016).  Construing the amended complaint in Plaintiff's favor, we found that Plaintiff alleged a plausible Fourth Amendment violation, noting that the alleged facts support Plaintiff's allegation that Alexis did not pose an immediate threat of serious harm when he was shot.  *Id.*

Following discovery, Defendant moved for summary judgment arguing he is entitled to qualified immunity on the § 1983 claim. The district court denied Defendant's motion for summary judgment and we affirmed. *Mighty v. Miami-Dade Cty.*, 728 F. App'x 974, 979 (11th Cir. 2018). We noted that, while Defendant testified that Alexis failed to comply with his commands and further that Alexis's right hand moved forward and up, Plaintiff's expert on the proper use of police force, Joseph Stine, disagreed, testifying that under Defendant's version of events, Plaintiff had complied with Defendant's commands. That is, Defendant had told Alexis, "Show me your hands," and never told him to drop his gun. Alexis complied with that directive, according to the expert. *Id*. at 977.

Moreover, as to whether evidence existed to dispute Defendant's claim that Plaintiff was armed at the time he was shot, Plaintiff's expert witness on firearms and ammunition, Gerald Styers, testified that in his opinion there was evidence to support an inference that Alexis was not holding a gun at the time he was shot. *Id*. Styers cited the fact that Alexis's gun had been found 20 feet away from Alexis's body and that Alexis's gun had been found among the spent shell casings that had fallen when Defendant fired his gun, which ejects its cartridge cases to the right and to the rear of the gun. *Id*. Styers also discounted as an explanation for Alexis's gun being near where Defendant fired his own gun the possibility that Alexis had thrown the gun because Styers found no markings or gouges on the

6

gun, which he would have expected to find because the gun would have landed on asphalt. *Id*. All of this led Styers to conclude that Alexis "was not in possession of the firearm when he was fired ... upon." *Id*.

Taking the facts in the light most favorable to Plaintiff, we found Defendant not entitled to qualified immunity because: (1) Alexis was not suspected of committing any crime; (2) Alexis did not try to flee or resist arrest; and (3) Defendant did not issue a warning before using deadly force. *Id*. at 979. We found "[t]he factor at issue here is whether Alexis posed an immediate threat to Defendant." *Id*. Viewing the facts in the light most favorable to Plaintiff, we assumed that "Alexis was not holding a gun—and that Defendant did not reasonably perceive him to be armed—meaning there is a disputed issue of fact as to whether Plaintiff posed a threat to Defendant when Defendant shot him." *Id*.

2.   The Jury Returns a Unanimous Verdict in Defendant's Favor

Following remand, the district court conducted a five-day trial. As anticipated in our summary judgment decision, the key issues at trial were whether Alexis was armed with his pistol and, if so, whether he posed a threat to Defendant when he was shot. Plaintiff introduced testimony from her experts supporting the contention that Alexis did not pose a threat to Defendant when Alexis was shot. Plaintiff's experts maintained that the physical and forensic evidence contradicted Defendant's account that Alexis was armed with a gun and that he refused to

7

comply with Defendant's commands when he was shot. Consistent with her pre-

trial position, Plaintiff maintained that even if Alexis was armed with a gun, the

fact that this gun was found about twenty feet from Alexis's body amid the pattern

of expended shell casings meant that Alexis must have dropped his gun and backed

across the street unarmed before he was shot. Plaintiff further argued to the jury

that Alexis could not have thrown the gun from where he was shot, given the gun's

final resting place, and suggested that the gun could have been placed there by

Defendant.

Defendant countered with expert testimony refuting the conclusions drawn

by Plaintiff's experts. Defendant also testified, insisting that Alexis had

approached his truck in a stealth-like manner with his right hand concealed behind

his back and refusing to respond to Defendant's commands that Alexis show

Defendant his hands. Defendant further testified that after reaching the windshield

of Defendant's truck and peering in, Alexis backed up, exposing the left side of his

body but still concealing his right arm, which Defendant suspected held a firearm.

Defendant stated that he exited his truck to maintain a visual on Alexis as he

backed across the street. Alexis then brought the gun around and raised it from a

low position. At that point, Defendant extended his arms and when Alexis pointed

his gun at Defendant, Defendant fired killing Alexis. Defendant testified that,

when Alexis pointed a firearm at him, he was terrified and thought he was going to die.  Defendant denied moving, planting, or touching Alexis's gun in any way.

The jury deliberated for less than four hours and returned a unanimous verdict in favor of Defendant, finding that he did not violate Alexis's constitutional right not to be subjected to excessive force.[1]  The district court entered final judgment in Defendant's favor.

### 3.    The District Court Denies Plaintiff's Motion for a New Trial

Plaintiff moved for a new trial pursuant to Federal Rule of Civil Procedure 59.  Plaintiff primarily argued that a new trial was necessary because Defendant's expert, Emma Lew, M.D., gave "outcome-determinative" testimony that was not disclosed nor was proper expert testimony.  In particular, Plaintiff asserted that the district court should not have allowed Lew to testify regarding how Alexis' gun might have ended up 20 feet from Alexis's body and behind Defendant's firing position.  Plaintiff also asserted the district court erred in denying Plaintiff the opportunity to introduce portions of Defendant's deposition testimony in her case-in-chief, forcing her to call Defendant to the stand in her case-in-chief and denying her the ability to ask leading questions.

Defendant opposed Plaintiff's motion for a new trial.  Defendant noted that the court had correctly denied Plaintiff's request to strike Lew's testimony and that

---

[1]  Plaintiff withdrew her wrongful death claim under Florida law during trial.

the district court had nevertheless stated it would grant a mistrial if either party so moved.  Defendant argued that Plaintiff should not be permitted to obtain a new trial post-verdict after electing not to move for a mistrial when given the opportunity at trial.  As for Plaintiff's complaints regarding the use of Defendant's deposition testimony, Defendant argued that the district court barred its use only in lieu of live testimony and did not preclude its use in cross-examining Defendant.  Defendant further argued that the district court did not abuse its discretion in prohibiting leading questions of Defendant during Plaintiff's case-in-chief, especially when the district court permitted leading questions during Plaintiff's unlimited cross-examination of Defendant.

The district court denied Plaintiff's motion for a new trial without expressly addressing Plaintiff's arguments.  The district court also denied Plaintiff's motion for reconsideration without comment.

Plaintiff timely appealed the entry of final judgment and district court's order denying Plaintiff a new trial.

## II.  DISCUSSION

Plaintiff raises four issues on appeal.  As originally addressed in Plaintiff's motion for a new trial, Plaintiff argues (1) the district court abused its discretion in allowing Defendant's expert Lew to offer previously undisclosed testimony and (2)

the district court erred in precluding her from playing Defendant's videotaped deposition and asking leading questions during her case-in-chief.

Plaintiff also raises two evidentiary issues not addressed in her motion for new trial. First, Plaintiff argues that the district court erroneously allowed Acevedo to testify about Alexis's prior bad act of pointing a gun at her. Second, Plaintiff asserts the district court abused its discretion in excluding from evidence Alexis's pistol.

### A.    Standard of Review

Plaintiff argues that the district court erred in some of its evidentiary rulings and further that these errors warranted the granting of Plaintiff's motion for a new trial. "We review the district court's rulings on the admission of evidence for abuse of discretion." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). "A district court abuses its discretion where its 'decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Id*. (quoting *United States v. Westry*, 524 F.3d 1198, 1214 (11th Cir. 2008)). "The district court's evidentiary rulings will be affirmed unless the district court has made a clear error of judgment or has applied an incorrect legal standard." *Id*. (internal quotation marks omitted). "However, even a clearly erroneous evidentiary ruling will be affirmed if harmless." *Id*.; Fed. R. Civ. P. 61.

11

As for the motion for a new trial, "[w]e review for an abuse of discretion a denial of a motion for new trial." *Tracy v. Fla. Atl. Univ. Bd. of Trustees*, 980 F.3d 799, 811 (11th Cir. 2020). When the alleged basis for a new trial is an evidentiary error by the trial court, per Federal Rule of Civil Procedure 61,[2] "a new trial is warranted only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice.'" *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004).

### B.   The Court Did Not Abuse Its Discretion By Admitting Dr. Lew's "Undisclosed" Testimony

Plaintiff argues that the district court abused its discretion when it allowed Defendant's expert Dr. Lew to offer testimony that Plaintiff characterizes as being previously undisclosed and outside the witness's field of expertise.[3] Plaintiff asserts that the district court should not have permitted Defendant to elicit from Dr. Lew "the surprise opinion that Mr. Alexis's arm must have jutted forward when he

---

[2] In pertinent part, Rule 61 provides: "Unless otherwise required, no error in either the admission or exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice. At every stage of the proceeding, the court must disregard all errors or defects that do not affect the party's substantial rights."

[3] Plaintiff offers the same argument in support of its contention that the district court's should have granted her motion for a new trial. As we conclude that the district court did not abuse its discretion in admitting the evidence—and hence committed no error—we do not further address Plaintiff's duplicative argument that the district court should have granted a new trial.

was struck by one of the bullets, hurling the pistol far enough away to end up behind the pattern of ejected shell casings shot by Defendant."

Defendant maintains that the district court did not abuse its discretion in admitting the challenged testimony, offering three reasons in support. First, Defendant notes that Dr. Lew had disclosed the contested testimony in her deposition three years prior to trial. Second, Defendant argues that the challenged testimony was admissible because it is well within Dr. Lew's expertise as the Chief Medical Examiner for Miami-Dade County and bears directly on the issue Plaintiff raised in her case-in-chief as to the location of Alexis's gun. Finally, Defendant argues that Plaintiff waived her ability to seek reversal or a new trial on this ground when she declined the district court's numerous offers of a mistrial.

1.   The District Court's Admission of Expert Testimony Regarding the Location of Alexis's Pistol

A central theme in Plaintiff's case was both to cast doubt on the question whether Alexis was even holding a gun and to suggest that, even if Alexis had a gun, he dropped it before being shot by Defendant. In support of this position, Plaintiff relied on the gun's location near the shell casings ejected from Defendant's gun. Each of the three experts called by Plaintiff addressed and supported Plaintiff's theory of the case.

Plaintiff's firearms expert, Gerald Styers, testified that Alexis's gun "would have been behind and to the right of [Defendant] as [Defendant] fired his gun,"

13

based on its location within the pattern of ejected fired cartridge cases.  He further

opined that it was "unlikely" that Alexis was holding his gun when shot and that he

could not exclude other explanations for the location of Alexis's gun, offering that

it "could have been dropped or placed there" by someone else.  Albeit Defendant

objected to the speculative nature of his testimony, Joseph Stine, a police practices

experts, was allowed to testify that, in his opinion, Alexis brought his hand out

from behind his back to show Defendant his hand and that action in response to

Defendant's instruction was "consistent with his bringing the hand around and

intending to drop the gun."  The court further permitted Stine to testify, again over

Defendant's objection, that "if the gun was in Mr. Alexis's hand to begin with and

it is dropped where the police say they found it," this fact is significant because it

shows Defendant continued to shoot after Alexis dropped the gun.  Finally, Dr.

John Marraccini, Plaintiff's forensic pathologist also testified that Alexis's gun was

"in the wrong place" due to its proximity to the shell casings ejected from

Defendant's gun, but he formed no opinion on how it got there.

During his case, Defendant sought to rebut the testimony of Plaintiff's

experts that Alexis's gun was "in the wrong place" by highlighting another

possibility.  In particular, defense counsel asked Dr. Lew if she could "explain the

location of Mr. Alexis's gun amidst the casings."  Dr. Lew had prepared an expert

report concluding that "[t]he evidence, including the findings at the scene, the

Miami-Dade Police Crime Scene photographs, the Medical Examiner scene photographs and the autopsy findings, is consistent with the statements given by [Defendant] and with the statements given by [] Acevedo regarding the shooting incident."  Although Dr. Lew's report had not focused on the location of Alexis's gun amidst the casings, Plaintiff did not object to Defendant's question seeking an explanation for the location of the gun.  Nonetheless, the district court asked Dr. Lew how she would be able to explain the location of the gun and Dr. Lew replied that she could do so with "movements" based on her "knowledge and experience of having attended over 1100 scenes, many of them with gunshot wounds."  The district court further established through questioning of Dr. Lew that her testimony explaining the location of the gun based on "movements" would not be based on "[her] examination of the body."  Plaintiff still did not object.  Without any objection from Plaintiff, Dr. Lew testified regarding how Alexis's physical reaction to receiving gunshot wounds could explain the location of his gun at the scene:

> Mr. Alexis' position where his hand cannot be seen by the officer and he brings his hand around, the officer shoots.  He gets shot, it's painful, and as he's bringing his arm around with the gun -- it's not slow motion like I'm showing you.  That gun is heavy.  I have felt it. So it would be pretty quick, and as he gets shot, he flinches because it's painful and that's when he screams and Ms. Acevedo hears him scream.  So with this pain, he's now distracted by the pain, he's bringing his arm from around, and with the momentum of the moving arm, he releases his gun. So he could concentrate on gunshot wounds, and as he releases his gun,

the gun flies out of his hand on to the road and more towards the officer's truck.

Only after Dr. Lew offered this explanation did Plaintiff object to his testimony as speculative.  Moreover, upon questioning by the district court, Plaintiff conceded there was no substantial difference between Dr. Lew's trial testimony and the deposition testimony she gave nearly three years before trial[4], leading the district court to conclude that the opinion was timely known.  Plaintiff further conceded that she had failed to challenge this testimony in any pre-trial *Daubert* motion or motion in limine.  Out of the presence of the jury, the district court conducted a "mini Daubert hearing," during which the court elicited from Defendant the remainder of his proposed questioning of Dr. Lew and Plaintiff's anticipated cross-examination.  The district court adjourned for the weekend and invited the parties to file briefs addressing Dr. Lew's testimony regarding location of the gun.

Plaintiff then filed a motion to strike Dr. Lew's testimony regarding the gun, arguing that it was not properly disclosed and constituted unsupported speculation not permitted under *Daubert*.  Plaintiff also requested a curative instruction to the jury that they should not consider Dr. Lew's struck testimony.

---

[4] Dr. Lew testified at deposition:  "So in doing so, as he's bringing his hand up with the gun, he gets a shot which is painful. At that point with the arm -- with that right arm in motion already, he lets go because he now is feeling the pain of the gunshot.  And as he lets go, the weapon then possibly flies a short distance or a distance through the air and possibly slides to its terminal position closer to the truck."

Defendant opposed Plaintiff's motion, arguing that it was untimely and that Dr. Lew's testimony was supported by the conclusions drawn in her report as more fully described in her deposition testimony, which was nearly identical to her trial testimony. Defendant also argued that Dr. Lew was eminently qualified to testify regarding the internal impact and effect of the gunshot wounds on Alexis's body, most notably the concept that pain would necessarily cause him to release his grip on his gun and the physics underlying her testimony. Defendant also asserted that even if Dr. Lew's opinion were deemed speculative, it should nevertheless be admitted under the doctrine of curative admissibility because the court had allowed Plaintiff's experts, including Plaintiff's pathologist Dr. Marraccini, to themselves speculate that the gun was dropped before Alexis was shot and that the gun was "in the wrong place." Finally, Defendant requested a curative instruction informing the jury that Defendant had timely disclosed Dr. Lew's testimony.

The district court ruled from the bench the next trial day after hearing additional arguments from the parties. As both parties had complained about the speculative nature of the other's expert testimony, the court stated that it would grant a mistrial if either party requested it. Both parties expressly declined to move for a mistrial. Plaintiff agreed with the district court's assessment that whether Dr. Lew's opinion was timely disclosed was no longer an issue "because you're entitled to a mistrial if you wanted to and you don't want it." The district court

determined that, at that point, the only issue remaining was whether Dr. Lew's testimony was admissible.  The parties then focused on whether Dr. Lew's testimony about what was "possible" was appropriate expert testimony, albeit neither party was able to cite a case addressing the issue.

The district court questioned whether the expert testimony already admitted regarding the experts' various explanations for the final resting place of Alexis's gun "offers that much beyond the understanding or experience of an average citizen."  The district court recognized that it "could probably exclude a lot of things if I had to do it over again" which is why it offered to do that if either side wanted a new trial.  The district court characterized the issue of whether Dr. Lew's testimony was proper expert testimony as a "close question" but acknowledged that "it's just as close with the other experts" who had already testified for Plaintiff.  The court concluded, "[b]ut I think out of fairness, once all of this has come in and based upon the fact that the testimony is pretty much the same regarding the pistol, . . . which is Mr. Alexis', the testimony of Dr. Lew is the same, I'm going to let her finish her testimony regarding what she thinks."

Before permitting Dr. Lew's testimony to continue, the district court emphasized at length to the jury that they were free to accept or reject any of the expert opinions offered at trial.  Following that instruction, Defendant concluded his direct examination of Dr. Lew with her testifying that the "release of Mr.

Alexis's own gun from his own hand" while being shot can explain the location of the gun amidst the casings.  Plaintiff highlighted on cross examination that Dr. Lew had testified at deposition that she did not know whether Alexis's gun was "thrown" to its final position.  Thus, when the jury retired for deliberation the full extent of each expert's opinion regarding the location of the gun was known.

2.   The District Court Did Not Abuse Its Discretion in Admitting Dr. Lew's Testimony Regarding Alexis's Pistol

As explained above, we review the district court's evidentiary rulings for an abuse of discretion, but will reverse only if "the error may have had a substantial influence on the outcome of the proceeding."  *United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir. 2011) (quoting *United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990)).  We conclude that the district court did not abuse its discretion in admitting the testimony in question.

First, we disagree with Plaintiff's assertion that Dr. Lew gave "undisclosed" "surprise testimony."  Dr. Lew prepared an expert report in which she concluded that the crime scene evidence was consistent with Defendant's testimony regarding the shooting incident.  Dr. Lew further gave deposition testimony substantially identical to her trial testimony regarding how Alexis's physical reaction to receiving gunshot wounds could cause Alexis to release his gun in a way that the latter did not drop straight to the ground.  Thus, Plaintiff was aware of Dr. Lew's opinion more than three years before trial and should not have been surprised to

19

hear her parrot this deposition testimony when she was asked, without objection, to "explain the location of Mr. Alexis's gun amidst the casings."  Moreover, Plaintiff agreed that the alleged untimeliness of the disclosure of the opinion was no longer an issue, given her declination of the district court's repeated offers of a mistrial.

Second, we see no abuse of discretion in the admission of Dr. Lew's testimony under the unique circumstances here.  No question, each expert's (both Plaintiff's and Defendant's) explanations of what might have happened to Alexis's gun—e.g., it was dropped to the ground before Alexis was shot, it was released from Alexis's grip when he was shot, or it was placed there after the shooting—are arguably matters that might be deemed to be largely within the understanding and experience of the lay juror, and therefore not the proper subject of expert testimony under Fed. R. Evid. 702(a).  But we need not resolve that issue.  Even if Dr. Lew's testimony regarding Alexis's release of the pistol could be deemed as inadmissible expert testimony, the court did not abuse its discretion in admitting it on grounds of fairness given that the already-admitted testimony of Plaintiff's experts is subject to the same characterization.  *See Bearint ex rel. Bearint v. Dorel Juv. Grp., Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004) (describing doctrine of curative admissibility).  Moreover, the district court mitigated any prejudice by repeatedly emphasizing to the jury, including during Dr. Lew's testimony, that expert

testimony depends on the facts upon which the expert's opinion hinges and that such testimony could be accepted or rejected by the jury.

Plaintiff asserts that she did not open the door to the admissibility of Dr. Lew's testimony by introducing inadmissible evidence through her own experts. In particular, Plaintiff maintains that her "experts did not render any opinion testimony that David Alexis' pistol was planted among the shell casings, or otherwise speculate as to how it was located there." We disagree. Styers testified as to his belief that Alexis was not holding his gun when shot and speculated that the gun "could have been dropped or placed" where it was found. Stine testified over Defendant's speculation objection that the evidence was "consistent with [Alexis] bringing the hand around and intending to drop the gun." And Dr. Marraccini reinforced the testimony that Alexis's gun could have been "placed" in its final location with his own opinion that Alexis's gun was "in the wrong place" and he did not know how it got there. Thus, the record reflects that Plaintiff's experts entertained the possibilities that Alexis was unarmed and his gun was planted "in the wrong place" or, if armed, that Alexis dropped the gun and backed away from Defendant before being shot.

We thus conclude that the district court acted within its discretion in allowing Dr. Lew's testimony as rebuttal to the testimony offered by Plaintiff's experts commenting on the location of Alexis's gun and how it arrived in its

location at the scene.  Again, to the extent Dr. Lew's testimony that being shot

could have caused Alexis to release his gun in a manner that it flew forward out of

his hand could be considered speculative, the testimony of Plaintiff's experts that

Alexis's gun "could have been dropped or placed" in its final location is equally

subject to the same characterization.  To correct any unfair prejudice caused by

inadmissible evidence, the district court "may in its discretion allow the opposing

party to offer otherwise inadmissible evidence on the same matter."[5]  *Id*.

Accordingly, the district court did not abuse its discretion in admitting this

testimony by Dr. Lew.

### C.      The Court Did Not Abuse Its Discretion in Managing the Admission of Testimony from Defendant

Plaintiff argues that the district court undermined her case by precluding her

from showing portions of Defendant's videotaped deposition in her case-in-chief

and by forbidding her from asking leading questions of Defendant in her case-in-

chief.  Plaintiff asserts that she sought to introduce portions of Defendant's

videotaped deposition in order to illustrate his demeanor to the jurors and that

doing so is permitted under Federal Rule of Civil Procedure 32(a)(3).  Plaintiff

---

[5]  In making this statement, we are not necessarily agreeing that Dr. Lew's testimony was inadmissible.  We note that Dr. Lew's testimony was grounded on body mechanics, the impact of bullets on the body, and how the body reacts to pain.  Plaintiff does not challenge Dr. Lew's qualifications to render an opinion on these topics.  But we need not decide here whether the testimony would have been admissible absent the admission of testimony by Plaintiff's experts that could be deemed as equally speculative.

further asserts that the court should have permitted leading questions of Defendant

as a hostile witness in accordance with Federal Rule of Evidence 611(c).

Defendant asserts that the district court's rulings were well within its

discretion and a proper exercise of authority to fulfill its obligation to exercise

reasonable control over the presentation of evidence.  Defendant notes that

Plaintiff failed to cite a single case supporting her arguments that the district court

abused its discretion in making the challenged rulings, much less show that any

error was harmful.

We agree that the district court did not abuse its discretion in making these

challenged rulings.  "While the district court 'has an obligation to ensure a fair

trial,' *United States v. Thayer*, 204 F.3d 1352, 1355 (11th Cir. 2000), it also 'has

broad discretion in the management of the trial,' and we will not reverse a

judgment based on the court's trial management rulings 'absent a clear showing of

abuse.'"  *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1408 (11th Cir. 2011)

(quoting *United States v. Hilliard*, 752 F.2d 578, 582 (11th Cir. 1985)).

Federal Rule of Evidence 611(a) states that the court "should exercise

reasonable control over the mode and order of examining witnesses and presenting

evidence so as to . . . (2) avoid wasting time."  Fed. R. Evid. 611(a)(2).  As for the

playing of videotaped deposition testimony, the court's ruling merely precluded

Plaintiff from using deposition testimony as a substitute for live testimony from an

available witness.  The jurors had ample opportunity to assess Defendant's

demeanor throughout trial, including when he was questioned in Plaintiff's case-in-

chief and again in Defendant's case.  Moreover, the court did not preclude Plaintiff

from cross-examining Defendant with his videotaped deposition to expose any

inconsistencies in his trial testimony.

The court also did not err when it precluded Plaintiff from asking leading

questions of Defendant in her case-in-chief.  The court so ruled because Defendant

was to be recalled in his own case and the court saw no reason to allow Defendant

to be cross-examined twice.  The court afforded Plaintiff the ability to fully cross-

examine Defendant via leading questions when he was recalled.  The district

court's ruling avoided duplicative examination of Defendant via leading questions

and was within the court's broad discretion to manage the trial.

For all these reasons, we cannot say that the district court clearly abused its

discretion in issuing the challenged rulings, much less that any error in these

rulings so undermined Plaintiff's case as to justify disturbing the verdict rendered

by the jury.  *See* Fed. R. Civ. P. 61.

### D.    The District Court Did Not Abuse Its Discretion in Allowing Acevedo to Testify Regarding Alexis's Prior Act of Pointing a Gun at Her

Plaintiff argues that the court abused its discretion in permitting Yalysher

Acevedo to testify regarding Alexis's prior act of pointing a gun at her when she,

like Defendant, was seated in a vehicle in front of Alexis's house.  Plaintiff had

moved in limine to exclude evidence related to Alexis's prior bad acts.  The motion

generally referenced incidents of domestic abuse, which Defendant did not

introduce, but did not expressly address the exclusion of evidence that Alexis had

once pointed a gun at Acevedo when she was seated in a car in front of his house.

In response, Defendant argued that Acevedo would testify that Alexis "brandished

his gun at her" and such evidence was relevant in view of Plaintiff's position that

Alexis was not even armed or, even if armed, would not have pointed a gun during

his encounter with Defendant.

During the hearing on Plaintiff's motion, Plaintiff informed the district court

that her strategy was establishing that inconsistencies in physical findings "negate

. . . any believability that Alexis had a gun" on him when he was shot and therefore

Alexis's gun must have been taken from his vehicle and "planted" at the scene.

The district court denied Plaintiff's motion in limine "as it relates to the gun

because the gun is an issue.  Does he point a gun?  Did he have a gun?"  Thus, the

district court ruled that Acevedo's testimony regarding Alexis having a gun and

having brandished that gun at her was admissible.

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other

crime, wrong, or act is not admissible to prove a person's character in order to

show that on a particular occasion the person acted in accordance with the

character."  Fed. R. Evid. 404(b)(1).  Such evidence, however, may be admissible for other purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "The rule is 'one of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity.  The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite.'"  *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (quoting *United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004)).

"To determine whether evidence should be admitted under Rule 404(b), a court applies the following three-part test, which includes an analysis under Rule 403:  '(1) the evidence must be relevant to an issue other than the defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that the defendant committed the act.'"  *United States v. LaFond*, 783 F.3d 1216, 1222 (11th Cir. 2015) (quoting *Ellisor*, 522 F.3d at 1267 (internal quotation marks and citation omitted)).  Plaintiff challenges only parts one and two of the three-part test.

We conclude that the district court acted within its discretion and consistently with Rule 404(b) in permitting Acevedo's testimony.  Plaintiff and her experts disputed Defendant's position that Alexis had a gun on his person when he

approached Defendant and that Alexis pointed this gun at Defendant.  Indeed, at

the hearing concerning the motion to exclude the testimony, Plaintiff's counsel

acknowledged that his theory of the case was that Alexis never had a gun on his

person and that the latter was planted.  In other words, Plaintiff left open the

possibility that she would be arguing that the gun Alexis was conceded to have

owned remained in the car and that Alexis did not remove the gun as he

approached Defendant, sitting in his vehicle or, alternatively, that Alexis did not

point this gun at Defendant.  As a result, Plaintiff made Alexis's ability and

willingness to access his firearm a key issue during trial.  Acevedo's testimony that

Alexis had likewise pointed a gun at her and threatened her under similar

circumstances—while she was sitting in a vehicle in front of Alexis's house, just as

was Defendant—was highly relevant as to Alexis's opportunity, motive, and plan.

*Cf. United States v. Sterling*, 738 F.3d 228, 239 (11th Cir. 2013) (evidence of

defendant's prior bank robbing offense using a gun was relevant as to his intent to

use the gun during the commission of the charged bank robbing offense, as he had

previously used a weapon when robbing another bank); *United States v. Culver*,

598 F.3d 740, 748 (11th Cir. 2010) (evidence that defendant drugged and shocked

a minor was relevant to establishing that defendant had knowledge and means to

render minor unconscious for filming of child pornography even though several

months elapsed between the filming and defendant's drugging and shocking of minor).

Given the very probative value of Acevedo's testimony, and in view of the particular theory of the case advanced by Plaintiff, we conclude that its relevance was not substantially outweighed by unfair prejudice. "In evaluating [a] district court's ruling under Rule 403, we view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *LaFond*, 783 F.3d at 1222 (quoting *United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006) (citation omitted)); *see United States v. Covington*, 565 F.3d 1336, 1342–43 (11th Cir. 2009) (any prejudice flowing from admission of evidence of domestic violence was not "unfair" where it had significant probative value). Accordingly, the district court did not abuse its discretion in admitting Acevedo's testimony regarding Alexis's prior similar act of threatening Acevedo at gun point.

### E.    The District Court Did Not Abuse Its Discretion in Excluding Alexis's Pistol from Evidence

Plaintiff argues the district court abused its discretion in excluding Alexis's gun from evidence. At the conclusion of Plaintiff's case-in-chief, Plaintiff engaged in "the bookkeeping of making sure that the exhibits are all marked." At Plaintiff's request, the court admitted several exhibits. Following that exchange, Plaintiff mentioned Alexis's pistol, which was not on Plaintiff's exhibit list and, despite

having been examined by Plaintiff's expert on the stand, had never been given an

exhibit number by counsel nor had counsel ever offered the gun into evidence.

The court declined to admit the pistol.

Plaintiff asserts that "[t]he jury was unfairly deprived of its best opportunity

to resolve the conflicts between the experts' testimony on both sides about whether

or not David Alexis' pistol looked like it had been tossed onto hard pavement,

sliding across the asphalt and sustaining markings consistent therewith."

Defendant argues the district court properly exercised its discretion to exclude the

pistol from evidence because Plaintiff did not include the pistol on her exhibit list

and had not previously sought to introduce the weapon into evidence through any

of her witnesses.[6]

We find the district court did not abuse its discretion.  Declining to admit

into evidence an item that was not marked for identification during questioning

preserves the integrity of the record and will typically be a decision within the

district court's discretion.  Even if the district court's decision could be deemed an

---

[6] Defendant also argues that Plaintiff waived this issue because she never objected to the court's exclusion of the pistol and did not raise the issue in her motion for a new trial.  Indeed, Plaintiff appeared to accept the court's ruling and notably did not attempt to explain the alleged significance of actually admitting the pistol into evidence.  If admission of the gun was as important as Plaintiff now argues it to be, it would have been prudent for Plaintiff to have offered those reasons at the time when she was trying to belatedly get the gun admitted by the district court, not after the fact here on appeal.  Nevertheless, we do not need to reach the issue of waiver, given our determination that the district court did not abuse its discretion and that, even had it done so, the error was of no moment.

abuse of discretion, it did not substantially influence the outcome of the trial.

While the jury did not have access to Alexis's pistol, the court admitted multiple

photos of the pistol, including extreme close-ups from multiple angles, that clearly

reflected its condition.  The jury also had the benefit of Plaintiff's expert's

assessment that he did not see any damage to the pistol, as well as the crime

laboratory's assessment that did not report any damage to the weapon.

Accordingly, the record rebuts any reasonable inference that exclusion of Alexis's

pistol from evidence substantially influenced the outcome of the trial.

## III.  CONCLUSION

For the reasons explained above[7], we **AFFIRM** the decision of the district

court.

---

[7]  Because we have affirmed the judgment for Defendant, we need not address Defendant's
argument that he is entitled to qualified immunity.